COMMONWEALTH VS. JOSEPH TETI.

No. 01-P-1181.

Suffolk. September 10, 2003. - January 6, 2004.

Present: RAPOZA, GRASSO, & KANTROWITZ, JJ.

*Controlled Substances. Attorney at Law,* Conflict of interest. *Conflict of Interest. Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Indictment, Severance, Trial of indictments together. *Evidence,* Prior misconduct, State of mind.

A criminal defendant failed to demonstrate that his trial counsel had an actual conflict of interest arising out of cocounsel's brief representation of a key trial witness, where cocounsel's representation of the witness ended long before the defendant's trial and long before cocounsel learned of the witness's status as an informant against the defendant, and where there was no indication that cocounsel somehow gained access to privileged information through his representation of both the defendant and the witness that was used to the defendant's detriment [284-286]; moreover, the defendant failed to demonstrate that he suffered actual prejudice from any potential conflict arising out of the dual representation, where cocounsel's involvement with the trial was essentially nonexistent, where any information that he might have shared with lead counsel (which both attorneys denied) would not have harmed the defendant, and where the defendant indicated that he was satisfied with the representation he had received from his lead counsel [286-287].

Counsel at a criminal trial was not ineffective in failing to advise the defendant of an alleged conflict with respect to cocounsel, and no prejudice to the defendant stemmed from the alleged ineffectiveness in this regard, where counsel learned about cocounsel's prior representation of a key witness only on the third day of trial, and where informing the defendant of the alleged conflict would not have accomplished something material for the defense [287-289]; likewise, counsel was not ineffective for failing to move to sever the indictments against the defendant, or for failing to oppose the Commonwealth's motion to join the indictments, where the incidents giving rise to the indictments arose out of a series of criminal episodes connected together, and joinder was therefore appropriate [289].

Counsel at the trial of indictments alleging trafficking in cocaine was not ineffective for introducing in evidence the defendant's uncharged drug transactions with a Federal narcotics agent, where this evidence could have buttressed the defendant's entrapment defense by showing that the agent created the defendant's predisposition to sell cocaine [289-290]; moreover,

counsel was not ineffective for failing to deliver testimony concerning the defendant's state of mind, as allegedly promised in counsel's opening argument, where counsel never promised the testimony of experts, and where evidence of the defendant's psychological problems at the time was introduced through the defendant's own testimony concerning his ongoing drug dependency and his depression [290-291].

This court concluded that no remand for an evidentiary hearing was necessary on account of the denial of a criminal defendant's motion for a new trial based on a conflict arising out of cocounsel's prior representation of a key witness at trial, where the judge considering the motion had presided at trial and had conducted a thorough inquiry of the lead counsel, cocounsel, and the defendant. [291-292]

INDICTMENTS found and returned in the Superior Court Department on May 18, 1998, and November 18, 1998, respectively.

The cases were tried before *Nonnie S. Burnes*, J., and a motion for a new trial, filed on November 19, 2001, was considered by her.

*Rosemary Curran Scapicchio* for the defendant.

*Dean A. Mazzone*, Assistant Attorney General, for the Commonwealth.

KANTROWITZ, J. The defendant, Joseph Teti, appeals from his convictions of two indictments charging trafficking in cocaine.[1] He claims that (1) his Federal and State rights to counsel were violated due to the existence of a conflict of interest in one or both of his trial attorneys; and (2) he received ineffective assistance of counsel. We affirm.

*The evidence.* The record, murky in some areas, supports the following recitation. Matthew Deignan, a special agent for the United States Drug Enforcement Administration, was led to the defendant by an informant named Leo Lobello. Lobello had

---

[1]The defendant also filed a motion for a new trial, which was denied without a hearing by the trial judge. His appeal from that denial has been consolidated with his direct appeal. We are mindful that a motion for a new trial is addressed to the sound discretion of the judge, and the judge's disposition will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981); *Commonwealth* v. *Moore*, 408 Mass. 117, 125 (1990). Further, "[r]eversal for abuse of discretion is particularly rare where the judge acting on the motion was also the trial judge." *Commonwealth* v. *Schand*, 420 Mass. 783, 787 (1995).

been a friend of the defendant, and used this relationship to facilitate drug transactions between the defendant and Deignan. On five separate occasions between May, 1996, and May, 1997, the defendant sold cocaine to Deignan. Two of these sales (the subjects of the present indictments), as well as some of the conversations leading to the sales, were recorded on video and audio tape.

The defendant, substantially relying on a defense of entrapment, testified on his own behalf to the effect that he had a substance abuse problem, which he was addressing. He further indicated that he was called and contacted repeatedly by Deignan, who pressured him to sell cocaine.

The defendant also called his former friend, Lobello, who was serving a sentence in Federal prison on narcotics convictions. Lobello, who was treated as a hostile witness, was called for two reasons. First, it was hoped that Lobello would bolster the defense claim that the defendant was not predisposed to sell cocaine. Secondly, Lobello was painted as the instigator of the drug transactions, as well as a reprobate and liar, testifying to curry favor with the Federal authorities.[2]

*Facts underpinning the alleged conflict.* At different points in time, Attorney Bradford Keene represented both Lobello and the defendant. Keene came to represent Lobello first when, in or about April of 1998,[3] Lobello's mother, Marie, paid him $2,000 to attempt to have Lobello transferred from a Federal prison in South Carolina to one closer to his family in Massachusetts. Keene never met, or spoke, with Lobello. The sum total of his work consisted of making a few telephone calls

---

[2]Lobello was hoping to receive a reduction in his sentence for his "substantial assistance" to the government. Rule 35(b) of the Federal Rules of Criminal Procedure allows a defendant's sentence to be reduced upon the government's motion made within one year of sentencing if the defendant, after sentencing, provides substantial assistance in investigating or prosecuting another person.

[3]Keene told the judge he had been contacted by the Lobello family "[a]t some point about a year ago." Keene also stated of the undated receipt produced by the assistant attorney general, indicating that Keene had received $2,000 from the Lobello family, "I would say it was about a year ago." The trial of the defendant took place in April, 1999.

to the prison authorities in South Carolina, who never responded to his inquiries.[4]

Approximately one month later, in May, 1998, after the defendant had been arrested, charged, and arraigned on the matter at hand, Keene was privately retained to represent him. Keene worked on the case for a relatively short period of time when, in January, 1999, he received a call from Attorney John McBride. The crux of the call was that the defendant had terminated Keene and hired McBride. After sending the file to McBride's office, Keene did nothing. Although it was anticipated that Keene would withdraw his appearance as attorney for the defendant,[5] he never did.[6]

On the morning of the third day of trial, the assistant attorney general who was prosecuting the case informed the judge that she had just learned (erroneously, as it turns out) that Keene had been retained by Lobello's family to file a "Rule 35 [motion] for relief from sentencing." In fact, Keene had been retained to attempt to have Lobello transferred from a Federal prison in South Carolina to one closer to his family in Massachusetts.

Needless to say, the trial ground to a halt. The trial judge thoroughly aired the issue. Keene, perhaps indicative of the

---

[4]"The *complete* extent of my representation of Leonard Lobello was, retrospectively, and as aforementioned, to attempt a transfer of him from federal prison in South Carolina to a facility in or near the Commonwealth of Massachusetts. He retained another attorney for all appellate work" (emphasis in original).

[5]In a letter dated February 4, 1999, to the assistant attorney general handling the case, McBride indicated that he was the defendant's new attorney and that "Keene will be filing a withdrawal shortly." At a subsequent motion hearing held March 2, 1999, it appears Keene did not attend.

[6]The record is in conflict as to why Keene stayed on. Keene indicated that McBride, on the Friday prior to the Monday start of trial, called and asked him to " 'second seat' [McBride] at the upcoming trial"; McBride, in turn, indicated that Keene, who had never tried a case in Superior Court, asked to stay on, wishing to learn. What the parties do agree upon is that Keene did nothing other than observe. Indeed, when the case was called before the judge, the clerk indicated that the defendant was "represented by Attorney John McBride"; before the venire, the clerk informed the potential jurors of the same; McBride told the jurors that "[s]itting with me at counsel table is Attorney Bradford Keene, with offices in Lynnfield, who will be with me." When Keene was dismissed from the case, midtrial, nothing was said to the jury.

limited nature of his role, was not present in court at the time, arriving midway through the hearing. McBride repeatedly informed the judge that Keene had never told him of his relationship with Lobello and that he was shocked at the revelation.[7] Keene, upon his late arrival, told the court that about one year prior to trial, he was asked by the Lobello family if it would be possible for Lobello to be transferred to a correctional facility closer to his family. Keene stated he made several telephone calls to a prison official at the South Carolina facility where Lobello was being held. Apparently, Keene never actually spoke with the prison official, and his messages went unanswered. According to Keene, "[t]hat [was] the extent of my relationship. . . . I have never spoken to Leo Lobello, I don't know the man; and that's the extent of my relationship." Keene stated that at the time of his activity on Lobello's behalf, he was representing the defendant. He was, however, unaware that Lobello had been an informant against the defendant, as "[t]here was no disclosure to me at that point in time nor at any time during my tenure as official counsel to [the defendant]." When pressed by the judge as to when he had learned of Lobello's status as an informant against the defendant, Keene stated it had been only "[a]bout a week" before trial. As for the failure to disclose his having represented Lobello, Keene again emphasized his limited involvement with Lobello: "the extent of my relationship with Leo Lobello was to see if I could get him moved. It had no bearing on anything but that. The family came to me . . . . I made several attempts to get him moved, but that was the extent of my relationship. . . . I have never talked to Leo Lobello, I have never met the man. That was it."

Both Keene and McBride told the judge they had not discussed any aspect of Keene's representation of Lobello. After reviewing Keene's copy of Lobello's case file, the judge

---

[7] "Keene never told me — never, ever told me he worked for, received any money for or from Leo Lobello or his family, ever, judge. This is a total shock to me." "As an officer of the court, he never told me anything about Leo Lobello." In answer to the question, "Mr. Keene never told you that he had represented either [Lobello] or that he had ever received any money from the Lobello family," McBride responded, "Absolutely, judge." "I will go to my grave right now and tell you that Keene never told me that he had received one — that he had ever represented Lobello."

decided to "take Mr. Keene at his word that he . . . didn't know Mr. Lobello's name before last week."

The judge also inquired of the defendant, who stated that he had initially been represented by Keene, but that McBride had taken over the case several months before. The defendant informed the judge that he was "quite satisfied" with McBride's representation, his connection to Keene notwithstanding.[8]

*Actual conflict of interest.* "An actual or genuine conflict of interest arises where the independent professional judgment of trial counsel is impaired, either by his own interests, or by the interests of another client. An actual conflict requires reversal of a defendant's conviction under art. 12 of the Massachusetts Declaration of Rights without the necessity of showing that the conflict resulted in any prejudice." *Commonwealth* v. *Croken,* 432 Mass. 266, 272 (2000), *S.C.,* 59 Mass. App. Ct. 921, 921-922 (2003) (citation and quotations omitted). See Mass.R. Prof.C. 1.9(a), 426 Mass. 1342 (1998) (Conflict of Interest: Former Client). The burden is on the defendant to establish the existence of a genuine or actual conflict of interest. See *Commonwealth* v. *Shraiar,* 397 Mass. 16, 20 (1986); *Commonwealth* v. *Fogarty,* 419 Mass. 456, 459 (1995).

If the defendant meets his burden, reversal is mandated, without a showing of actual prejudice or "that [the conflict] had an adverse effect on his counsel's performance," *ibid.,* unless the defendant consents "to continued representation by his attorney 'so long as his consent is voluntarily, knowingly, and intelligently made.' " *Commonwealth* v. *Croken, supra* at 272 n.2, quoting from *Commonwealth* v. *Martinez,* 425 Mass. 382, 392 (1997). See *Commonwealth* v. *Hodge,* 386 Mass. 165, 170 (1982) ("having established a genuine conflict of interest, [the defendant] was required to prove neither actual prejudice nor

---

[8]Regarding the connection between Keene and McBride, McBride labored to make clear that he "never met Brad Keene in my life or talked to him until January [the trial commencing in April], when I knew that [the defendant] wanted to retain me to represent him. The only reason that Brad Keene is in the courtroom today is because he said, 'John, look, can I sit with you in this jury trial? I want to learn something.' . . . But that's the extent. I said fine — you know, just sit in there and shut up, and I'll do everything, and maybe you can learn something."

adverse effect on his trial counsel's performance to entitle him to a new trial under art. 12").

Here, the defendant has failed to establish such a conflict. The timeline, while not completely determinative, establishes that Keene's activities on behalf of Lobello occurred approximately one year prior to trial. We will assume that Keene was in fact engaged in the representation of Lobello, although there were never any conversations or direct contact between the two, at the time he was making telephone calls to the South Carolina prison at the behest of Lobello's family.[9] After several of these calls proved fruitless, Keene apparently did nothing further, and still never spoke with Lobello. His representation ended at that point. The record reflects that Keene repeatedly insisted that his several telephone calls were the extent of his activities on Lobello's behalf, and that Lobello was represented by different counsel in his motion pursuant to Fed.R.Crim.P. 35.[10]

In these circumstances, with Keene's representation of Lobello having ended long before trial, and long before learning of Lobello's status as an informant against the defendant, the defendant has not met his burden of establishing an actual conflict.[11] See *Commonwealth* v. *Patterson*, 432 Mass. 767, 775 n.9 (2000), quoting from *Commonwealth* v. *Martinez*, 425 Mass. at 388-389 ("When there has been some form of dual representation that would have posed a conflict, termination of the conflicting representation prior to the time of the defendant's

---

[9]We will further assume that Keene was engaged in the representation of the defendant at trial, his apparent lack of involvement in the proceedings notwithstanding.

[10]The defendant attempts to broaden Keene's representation to include work on the motion pursuant to Fed.R.Crim.P. 35(b). The record does not bear that out. "The *complete* extent of my representation of Leonard Lobello was, retrospectively, and as aforementioned, to attempt a transfer of him from a federal prison in South Carolina to a facility in or near the Commonwealth of Massachusetts. He retained another attorney for all appellate work."

[11]The defendant makes much of the judge's statements during the hearing on the issue to the effect that an actual conflict existed. That the judge, on first impression, believed there was a conflict did not prevent her from considering the issue further, and then specifically finding, in a reasoned and reflective memorandum denying the defendant's motion for a new trial, that there was, in fact, no conflict.

trial will ordinarily 'obviat[e] the risk of simultaneous representation' ").[12]

It is true that Keene represented the defendant after the defendant's arrest, prior to the defendant's hiring of McBride several months before trial. This fact establishes that there could have been a period .where Keene represented both Lobello and the defendant. But this could not have given rise to a conflict, because, as the judge found, Keene was not aware of Lobello's status as an informant against the defendant until one week before trial — a point by which his activities on Lobello's behalf had long since ended. Since a conflict occurs when the " 'independent professional judgment' of trial counsel is impaired . . . by the interests of another client," *Commonwealth* v. *Shraiar*, 397 Mass. at 20, quoting from S.J.C. Rule 3:07, Canon 5, as appearing in 382 Mass. 779 (1981), common sense dictates that Keene's judgment could not have been impaired when he was not aware of the potentially divergent interests of his two clients. See *Commonwealth* v. *Griffin*, 404 Mass. 372, 376 (1989). But see *Commonwealth* v. *Geraway*, 364 Mass. 168, 175 (1973). Moreover, there is no indication that Keene somehow gained access to privileged information through his representation of both the defendant and Lobello that was used to the defendant's detriment. See *Commonwealth* v. *Soffen*, 377 Mass. 433, 437-438 (1979) ("the constitutional guaranty is intended to prevent a defendant's attorney from being hampered by contemporaneous divided loyalties or by having acquired privileged information which inhibits him in his representation of the defendant").

*Potential conflict of interest.* Should a defendant· be unable to demonstrate an actual conflict, he may still gain a new trial if he can establish "a potential or 'tenuous' " conflict, *Commonwealth* v. *Patterson*, 432 Mass. at 775, which caused him "actual prejudice." See *Commonwealth* v. *Fogarty*, 419 Mass. at 459.[13] "Actual prejudice is measured against the standard in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), as in

[12]See the Appendix to the opinion for a nonexhaustive list of cases finding either conflict or its absence.

[13]As to the distinction between an actual and a potential conflict, see and compare *Commonwealth* v. *Boateng*, 438 Mass. 498, 510 (2003) (potential,

cases involving claims of ineffective assistance of counsel." *Commonwealth* v. *Croken*, 432 Mass. at 272.

Passing over the question whether there existed a "tenuous" conflict, the defendant has not shown any prejudice. Keene's involvement with the trial was essentially nonexistent. His role, as expressed by McBride, was to "just sit in there and shut up, and I'll do everything, and maybe you can learn something." Moreover, both McBride and Keene insisted that Keene had not participated in the preparation of the case, and the judge so found.[14] Even had Keene shared information concerning Lobello with McBride, which both attorneys deny, this could not have harmed the defense. It would have been to the defendant's benefit for McBride to know more about Lobello, a hostile witness. In sum, there is no basis for a finding of prejudice based on Keene's alleged potential conflict. See *Commonwealth* v. *Miller*, 435 Mass. 274, 282-283 (2001). Cf. *Commonwealth* v. *Edgerly*, 390 Mass. 103, 108-109 (1983).

It is significant that when questioned by the judge about the alleged conflict, the defendant indicated he was "quite satisfied" with McBride.

*Ineffective assistance of trial counsel.* The defendant next urges that his trial counsel, McBride, was ineffective in several respects, including (1) failing to advise the defendant of the al-

but not actual, conflict where defense counsel also represented prosecution witness in unrelated civil matter), with *Commonwealth* v. *Hodge*, 386 Mass. at 166-168 (actual conflict found in defense counsel's law partner having represented prosecution's rebuttal witness in civil matter, where cross-examination of witness would discredit him, witness was key, and his testimony focused on critical issue and was absolutely contrary to defendant's testimony), and *Commonwealth* v. *Goldman*, 395 Mass. 495, 503-504, cert. denied, 474 U.S. 906 (1985) (actual conflict where defense counsel had "clear duty to maintain the confidence of his former client," who would testify against defendant). See also *Commonwealth* v. *Walter*, 396 Mass. 549, 554-558 (1986) (potential, but not actual, conflict where defense counsel represented possible defense witness); *Commonwealth* v. *Epsom*, 399 Mass. 254, 262-263 (1987) (potential, but not actual, conflict where defense counsel represented prosecution witness's father in unrelated civil case); *Commonwealth* v. *Allison*, 434 Mass. 670, 688-693 (2001) (no actual conflict where various codefendants were represented by attorneys who merely shared office space); *Commonwealth* v. *Bonefont*, 35 Mass. App. Ct. 54, 55-56 & n.3 (1993) (no actual, but potential, conflict where defense counsel represented victim's parents in unrelated guardianship proceeding). See also the Appendix to the opinion.

[14]See notes 5 and 8, *supra*.

leged conflict with respect to Keene; (2) failing to file a motion to sever the indictments; (3) introducing evidence of the defendant's uncharged drug transactions; and (4) failing to present "promised" testimony concerning the defendant's state of mind.[15]

To determine whether counsel was ineffective, we employ the well-known two-step analysis: "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. at 96.

As to whether McBride was ineffective in failing to advise the defendant regarding Keene's alleged conflict, or in failing to ascertain whether Keene had such a conflict, we conclude he was not. Keene and McBride emphasized that Keene was essentially an observer; that Keene learned of Lobello's status as an informant only a week before trial; and that McBride found out about Keene's representation only on the third day of trial. Via affidavit, Keene represented that following McBride's taking the case from him, he "played no further role in [the] defense" until asked to join McBride at counsel table a few days prior to the start of trial.

In any event, we discern no prejudice stemming from McBride's alleged ineffectiveness in this regard. It is difficult to see how better work by McBride — in this case, informing the defendant of Keene's prior representation of Lobello — would "have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). The defendant now insists that had he been so informed, he would not have elected to continue to be represented by McBride. This assertion is belied by the defendant's assertion to the judge that he was "quite satisfied" with McBride's representation.

The defendant also suggests in his affidavit that he was pressured by McBride into "proceed[ing] with the trial." This asser-

---

[15]Intertwined with the ineffective assistance claim is a suggestion that McBride, too, was conflicted. As our discussion should make clear, this claim is without merit.

tion is likely intended to counter the suggestion that the defendant waived any objection to the conflict. See, e.g., *Commonwealth* v. *Jones*, 403 Mass. 279, 287-288 (1988). The judge conducted a colloquy of the defendant with respect to the defendant's satisfaction with McBride's representation. It is disingenuous for the defendant now to suggest that had he been given the opportunity to consult with other counsel unrelated to the litigation, he would have insisted on not being represented by McBride.

The defendant's next contention is that McBride was ineffective for failing to move to sever the indictments, or for failing to oppose the Commonwealth's motion to join the indictments. Joinder was appropriate in this case because each drug transaction was a "related offense," that is, they arose "out of a . . . series of criminal episodes connected together." Mass.R.Crim.P. 9(a), 378 Mass. 859 (1979). The amount of cocaine sold was approximately the same in each instance. In each case, Deignan was the purchaser, the transaction was initiated by a telephone call from Deignan, and the phone call and the sale took place the same day. The two sales took place within four months of each other. This is not a case where, for example, instances of misconduct against unrelated victims took place years apart, and there was no evidence of a pattern, a common scheme, or the like. See *Commonwealth* v. *Jacobs*, 52 Mass. App. Ct. 38, 39-43 (2001). Moreover, given the minimal dispute as to the circumstances and personnel involved in the transactions, the balance swings clearly in favor of judicial economy, see *Commonwealth* v. *Helfant*, 398 Mass. 214, 231 (1986), and against severance based on prejudice to the defendant. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 303-304 (1991). Finally, we note that the failure to move for severance may have been a strategic decision, designed to highlight Deignan's initiation of each transaction. See *Commonwealth* v. *White*, 409 Mass. 266, 273 (1991). Counsel was not ineffective in this regard.

The defendant next claims counsel was ineffective for introducing in evidence the defendant's uncharged drug transactions with Deignan. The trial judge, acting on the defendant's motion for a new trial, reasoned that this evidence could have

buttressed the entrapment defense by showing that Deignan created the defendant's predisposition to sell cocaine. The judge noted that it was defense counsel who called Lobello as a hostile witness, and elicited from him evidence (as characterized by the judge) of "repeated, persistent solicitation . . . by Lobello and Deignan."

The defendant counters that this evidence destroyed his entrapment defense because it portrayed the defendant as a "bad person and a drug dealer." We disagree. Evidence of sales to *other* persons may have damaged the entrapment defense. Here, however, each sale was to Deignan. The coercion in which defense counsel sought to portray Deignan as having engaged was not minimized, and may have been heightened, by this evidence. Such may not have been the case had the evidence been of drug transactions with other persons, because were that the case, the defendant would have been faced with demonstrating that different people on different occasions under different circumstances all brought about a predisposition in the defendant toward criminal activity. In this case, where the evidence of guilt was powerful, and where the challenged evidence may well have helped in the defense, we cannot fairly conclude the defendant was deprived of an otherwise available, substantial ground of defense.

Finally, the defendant claims counsel was ineffective for failing to deliver "promised" testimony concerning the defendant's state of mind. As a preliminary matter, defense counsel never promised the testimony of experts. Thus, the defendant's citation to *Anderson* v. *Butler*, 858 F.2d 16, 17 (1st Cir. 1988), is misplaced.[16] What was promised was this: "what I expect the evidence to show is . . . that the government preyed upon this individual, this man who had psychological problems at the time, who was under the influence of medication, and who was using and abusing drugs. He'll admit it — it was a problem he had." This case is more akin to *Commonwealth* v. *DeCicco*, 44

---

[16]In *Anderson* v. *Butler*, 858 F.2d at 17, it was said, "The promise was dramatic, and the indicated testimony strikingly significant. The first thing that the ultimately disappointed jurors would believe, in the absence of some other explanation, would be that the doctors were unwilling, viz., unable, to live up to their billing. This they would not forget."

Mass. App. Ct. 111, 123 (1998), which distinguished *Anderson* v. *Butler, supra,* noting that the defense attorney's statement (that the defendant might testify) "was far from a dramatic promise."

An additional problem for the defendant is that such evidence was introduced through the defendant himself. The defendant testified to his ongoing drug dependency, and his depression. While it may have been minimally helpful for defense counsel to seek to introduce the testimony of two of the defendant's treating psychiatrists to corroborate the defendant, it was not ineffective assistance of counsel not to do so. See *Commonwealth* v. *Ortega,* 59 Mass. App. Ct. 217, 223, further appellate review granted, 440 Mass. 1105 (2003) ("Ineffective assistance of counsel is not established simply by showing that the defendant's counsel did not call a witness. . . . The defendant must make a showing that the purported testimony would have been either relevant or helpful").

*Evidentiary hearing.* In this appeal, the defendant does not request a remand for an evidentiary hearing on his new trial motion. Nonetheless, we consider whether a remand is necessary, and conclude it is not. There is little that could be introduced at such a hearing that either was not addressed at trial, or could not have been introduced via affidavit in support of the motion. The trial judge conducted a thorough inquiry of McBride, Keene, and the defendant. While it would be tempting to speculate as to how any of the involved individuals might testify under oath, it seems quite unlikely they could offer any more than that which they have already stated.[17] Compare *Commonwealth* v. *Croken,* 432 Mass. at 276 (remand necessary as "[t]here are obvious and serious questions in this case that should have been addressed, but were not"); *Commonwealth* v. *Downey,* 58 Mass. App. Ct. 591, 595-598 (2003) (remand necessary where defendant asserted he did not consent to attorney's potential disclosures of confidential communications as part of

---

[17]We note that in addressing the judge in open court, the attorneys were bound by an ethical duty to be candid and honest. "[A]n attorney is a 'key component of a system of justice,' *Nix* v. *Whiteside,* 475 U.S. 157, 174 (1986), and is bound to uphold the integrity of that system by being truthful to the court." *Matter of Neitlich,* 413 Mass. 416, 423 (1992). See *Commonwealth* v. *Pavao,* 39 Mass. App. Ct. 490, 500-501 (1995), *S.C.,* 423 Mass. 798 (1996).

attorney's agreement with television producer filming documentary of trial, Commonwealth asserted defendant did consent, affidavits were unclear, and motion judge made no express finding on that critical issue).

*Judgments affirmed.*


APPENDIX.

In a nonexhaustive list, no conflict was found in the following cases:

*Commonwealth* v. *Smith,* 362 Mass. 782, 783-784 (1973) (no conflict where, among other factors, defense counsel owed no "continuing duty of loyalty" to prosecution witness who had already been sentenced at time of defendant's trial);

*Commonwealth* v. *Griffin,* 404 Mass. 372, 375-377 (1989) (no conflict despite attorney having represented three defendants before grand jury. "In assessing whether the defendants have met their burden of demonstrating their attorney's conflicting interest, the court must look at the attorney's role during the time he was alleged to be operating under a conflict");

*Commonwealth* v. *Banister,* 428 Mass. 211, 215-216 (1998) (no conflict where defense counsel realized on fifth day of trial he had previously represented prosecution witness. "There was nothing to suggest that counsel owed or felt any continuing duty of loyalty to [the witness] at the time of trial . . . or that he continued at that time to be under any ethical, economic or social constraint arising out of his prior representation of [the witness]" [citations omitted]);

*Commonwealth* v. *Filippidakis,* 29 Mass. App. Ct. 679, 682-684 (1991) (no conflict where, although defense counsel had previously represented "alternative suspect" in defendant's case, previous prosecution of witness was concluded, and attorney-client representation had ended);

*Commonwealth* v. *Russo,* 49 Mass. App. Ct. 579, 585-586 (2000) (no conflict where, after arrest but before trial, defendant "communicated in confidence" with codefendant's trial counsel; because legal relationship between defendant and counsel for codefendant terminated before beginning of adversary proceedings, counsel for codefendant no longer owed continuing duty to defendant).

Conflict was found in:

*Commonwealth* v. *Martinez,* 425 Mass. 382, 390 n.7 (1997) ("While not dispositive on the issue as to whether [the attorney] still represented [the witness] at the time of Martinez's trial, in examining the ambiguous relationship between the two we note that [the attorney] continued to meet with [the witness] on various matters . . . throughout the time he was preparing Martinez's case for trial");

*Commonwealth* v. *Wooldridge,* 19 Mass. App. Ct. 162, 167-168 (1985) (conflict found where attorney from defense counsel's law firm previously

represented prosecution witness in "related matter," representation "existed while [defense counsel's] firm was preparing [defendant's] defense," and prosecution witness "was not entirely in the clear").

See also note 13, *supra*.