IN THE COURT OF APPEALS OF IOWA
No. 13-0224
Filed May 14, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT LYNN VAUGHAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Lee (North) County, John M. Wright, Judge.


        Robert Lynn Vaughan appeals from his conviction for arson.  **REVERSED AND REMANDED.**


        Mark D. Fisher of Nidey Erdahl Tindal & Fisher, Cedar Rapids, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Michael P. Short, County Attorney, and Clinton R. Boddicker, Assistant County Attorney, for appellee.


        Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

Robert Lynn Vaughan appeals from his conviction for arson. He argues the trial court erred in failing to grant his combined motion in arrest of judgment and motion for new trial on grounds the evidence to support his conviction was insufficient, and his pretrial counsel had an impermissible conflict of interest. We reverse and remand, finding the evidence is sufficient to support Vaughan's conviction[1] but that Vaughan's trial was unfairly tainted by his appointed counsel's actual conflict of interest during pretrial proceedings.

## I.    Facts and proceedings.

In the early hours of December 20, 2011, police were called to a fire at the house where Robert Vaughan lived with his mother. When police arrived, the garage was engulfed in flames, as were two trees. A fire burned in the main house as well. Vaughan and his mother left the house as the police arrived. Shortly thereafter, firefighters arrived. Some of the family dogs were located in Vaughan's truck and some were found running in the yard. The dogs were normally locked away in kennels near the garage. The vehicles were located closer to the residence, instead of in their typical location adjacent to the garage.

Police investigated the scene and found two distinct locations behind a desk in the home office where a fire was set. In the area of this fire, the fire

---

[1] We reach this issue despite our reversal on the conflict issue because: "When a reviewing court determines prejudicial trial error occurred in a criminal trial, the case will not be remanded for retrial when the evidence at trial was insufficient to support the conviction." *State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).

marshal located remnants of a "Molotov cocktail."[2] Vaughan's mother submitted a claim for the fire damage to her homeowner's insurance. The insurance company did not pay the claim because of the suspicious circumstances surrounding the fire. Further investigation by an electrical engineer retained by the insurance company ruled out electrical causes of the fire. In a deposition, Vaughan told counsel for the insurance company that investigators had discovered a problem of "reverse-wiring" in the home, which caused the fire.

On February 10, 2012, the State charged Vaughan by trial information with arson in the first degree. Four days later, the court appointed public defender Jon Henson to represent Vaughan.

On April 5, 2012, Henson filed an appearance in an unrelated criminal case against George Cline, Jr. Represented by Henson, Cline entered a guilty plea on May 31, 2012, and was sentenced on June 1. During this time, Cline became aware Henson also represented Vaughan. Cline asked Henson to tell the State he had information about Vaughan.[3] Henson notified the State.

Henson continued to represent both men, taking depositions of the State's witnesses in Vaughan's case.

The State added Cline as a witness against Vaughan in August. Henson then moved to withdraw from representation of Vaughan, notifying the court in his written motion his office represented a witness against Vaughan. The court

---

[2] A "Molotov cocktail" was described by the fire marshal at trial as an improvised incendiary device comprised in part of a glass bottle containing gasoline.

[3] The State and Henson agree Cline's request came after guilty plea and sentencing. Both also admit Cline was subject to ongoing criminal investigation by the prosecutor's office and represention by Henson's "firm"—the public defender's office. *See, e.g.*, *State v. Watson*, 620 N.W.2d 233, 241 (Iowa 2000) (noting the public defender's office is a "firm" for conflict-of-interest analysis purposes).

entered an order allowing Henson to withdraw and appointing substitute counsel, who represented Vaughan throughout trial. The court did not set a hearing on the motion to withdraw.

At Vaughan's trial, the State presented witnesses including Cline, the fire marshal, the electrical engineer, neighbors, and officers. Cline testified Vaughan had solicited his help to cause the fire and that Vaughan had made an inventory of his garage a couple of months before the fire for "insurance purposes." The State also presented transcripts of depositions given by Vaughan and two acquaintances during the insurance investigation. Vaughan's deposition included his statements about the "reverse-wiring." One acquaintance's testimony described the locations of the dogs and vehicles on the night of the fire. The witnesses testified regarding the cause of the fire and the suspicious circumstances surrounding the fire, including the potential of the fire to cause damage to other property.

After a brief deliberation, the jury convicted Vaughan of first-degree arson. Vaughan filed a combined motion for new trial and motion in arrest of judgment. He alleged, among other things, the evidence was insufficient to support the verdict and that his first attorney, Henson, had an impermissible conflict affecting his loyalties to Vaughan.[4] The court held an evidentiary hearing and denied the combined motion. Vaughan appeals.

---

[4] The motions alleged the prosecutors committed misconduct by using Cline's testimony because the testimony was obtained through a conflict of interest. The court and the prosecution treated the motion as pertaining to representation of Vaughan by counsel with a conflict.

## II. Analysis.

### A. *Sufficiency of the evidence.*

We review sufficiency-of-the-evidence claims for the correction of errors at law. *State v. Hennings*, 791 N.W.2d 828, 832 (Iowa 2010). We evaluate whether the record contains substantial evidence to support the jury's verdict. *Id.* We view the evidence in the light most favorable to the State, including the legitimate inferences and presumptions which can be deduced from the evidence. *Id.* at 832–33.

Vaughan's argument attacks the credibility of witnesses and circumstantial nature of the evidence. "[D]irect and circumstantial evidence are equally probative" when proving whether a defendant is guilty beyond a reasonable doubt. *State v. Bentley*, 757 N.W.2d 257, 262 (Iowa 2008). Further, "[t]he credibility of witnesses, in particular, is for the jury" to decide—the jury determines what witness to believe or disbelieve. *State v. Arne*, 579 N.W.2d 326, 328 (Iowa 1998). We find substantial evidence in the record supports the jury's verdict.[5]

### B. *Conflict of interest.*

Vaughan presents his argument under both the Iowa and Federal Constitutions. We review this issue de novo. *State v. Smitherman*, 733 N.W.2d 341, 345 (Iowa 2007).

---

[5] Vaughan also argues the jury was somehow pressured by weather to accelerate their deliberations, quoting a statement by the judge to a witness about getting safely home and the short period of deliberations. Vaughan cites no authority to support the proposition that this constitutes reversible error. We therefore do not consider this claim. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

These constitutional provisions [which apply to an attorney's conflict of interest] safeguard the defendant's right to a fair trial, which expressly includes the guarantee to "assistance of counsel." Iowa Const. art. I, § 10; *see* U.S. Const. amend. VI (using the identical words "Assistance of Counsel"). The assistance of counsel, of course, implies the effective assistance of counsel.

*Id.* at 346. We may find greater protection of these rights under our state constitution than are provided under the Federal Constitution. *See id.* at 347.

Our supreme court has decided a series of cases in recent years involving concurrent representation by defense attorneys of defendants and State's witnesses. In *State v. Watson*, 620 N.W.2d 233 (Iowa 2000), the court considered the simultaneous representation of a defendant and an adverse witness. The attorney simultaneously represented the adverse witness and the defendant throughout trial, though his co-counsel (and coworker at the public defender's office) conducted the cross-examination of the adverse witness. *Watson*, 620 N.W.2d at 234. The court concluded the district court had a duty to sua sponte conduct an inquiry into the conflict of interest and that "where the trial court knew or should have known of a particular conflict, reversal is required without a showing that the conflict adversely affected counsel's performance, even though no objection was made at trial." *Id.* at 237.

The United States Supreme Court rejected this bright-line rule as applied to the Sixth Amendment in *Mickens v. Taylor*, 535 U.S. 162 (2002). In *Mickens*, the defendant's attorney failed to disclose his representation of the victim at the time of the murder for which the defendant was charged. 535 U.S. at 164. The Court concluded, "it was at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's

performance." *Id.* at 174. The Court noted that Mickens's counsel labored under a conflict of prior representation, not concurrent representation, which presents a somewhat different inquiry. *Id.* at 175 ("Thus, the Federal Rules of Criminal Procedure treat concurrent representation and prior representation differently, requiring a trial court to inquire into the likelihood of conflict whenever jointly charged defendants are represented by a single attorney (Rule 44(c)), but not when counsel previously represented another defendant in a substantially related matter, even where the trial court is aware of the prior representation.").

Five years later, the Iowa Supreme Court decided *Smitherman*, 733 N.W.2d at 343. In that case, the court was again presented with the simultaneous representation of a defendant and an adverse witness. Smitherman, 733 N.W.2d at 343. This time, however, the conflict did not go unnoticed throughout the trial. *Id.* at 344. One of two attorneys representing Smitherman discovered he was representing an adverse witness; the attorney moved to withdraw from his representation of Smitherman after being informed of the prosecution's intent to use the adverse witness's testimony at trial; the court allowed the withdrawal, and held a hearing about the potential conflict. *Id.* at 344–45. There, as here, the defendant requested the court presume prejudice based on the conflict. *See id.* at 346. The court summarized the law regarding conflict-of-interest claims: "[A] conflict-of-interest claim only requires the defendant to make a showing whereby we can presume prejudice." *Id.* The court framed the issue before it as, "under what circumstances are we to presume prejudice when the trial court has performed an inquiry?" *Id.* at 347. The court concluded Smitherman was required to show an adverse effect

stemming from the conflict of interest in order to prevail on his claim under the Iowa and Federal Constitutions.[6]  *Id.*

The court provided the following rationale:

The nature of the conflict makes it difficult to effectively measure the harm visited on the trial by conflicted counsel.  On the other hand, when the court makes an inquiry in some form into the conflict, the attorney is no longer quietly inflicting the inherent harm into the trial that supports the automatic reversal rule.

*Id.* at 348.

The State and Vaughan agree that an actual conflict of interest arose when Vaughan's attorney, Henson, discovered he also represented an adverse witness.  The parties do not agree whether this actual conflict began when Henson learned Cline wanted to talk to the State about Vaughan's case.  The State asks us to speculate that Henson could assume Cline wanted to exonerate Vaughan.  We decline to do so.

The trial court did not conduct an inquiry into the extent of Henson's conflict until after Vaughan was convicted,[7] although it did grant Henson's motion to withdraw as Vaughan's counsel and was informed a conflict existed.  Vaughan did not acquiesce to the simultaneous representation.  The court did not analyze what effect the concurrent representation had on counsel's pretrial behavior and what, if any, effect would carry over into the trial.  No prophylactic remedy was put in place to prevent harm from the concurrent representation.  The trial court

---

[6] The court also declined to decide whether the *Watson* presumption of prejudice survived the Supreme Court's decision in *Mickens*, noting the court could choose to construe our state constitution more broadly than the United States Constitution. *Smitherman*, 733 N.W.2d at 347.

[7] For this reason, we find Vaughan's alternative request to reverse for a hearing into the conflict is misplaced.  *See, e.g.*, *id.* at 344.

allowed the ongoing inherent harm to continue through the trial, although substitute counsel was appointed. *See Watson*, 620 N.W.2d at 237.

Even if the *automatic* reversal rule adopted by the court in *Watson* regarding concurrent representation under our Iowa Constitution has not survived (*see Smitherman*, 733 N.W.2d at 347 (noting the *Watson* rule may still stand under the Iowa Constitution and distinguishing Smitherman's conflict from Watson's by important factors such as inquiry by the court, prophylactic remedy, and acquiescence by the defendant)), the conflict here infected the entire pretrial and preparation period during defense counsel's eighty days of concurrent representation. During discovery, depositions, and conferences with Vaughan, counsel knew another client was giving information about Vaughan to the State.[8] Though this concurrent conflict did not continue through *trial*, as noted by the partial dissent, the pretrial process is fundamental to ensuring a defendant receives a fair trial.

Our supreme court has stated, "An important purpose of a deposition is to allow a defendant to take the testimony of a witness under oath to determine the extent of the witness's knowledge of the facts of the case." *State v. Folkerts*, 703 N.W.2d 761, 765 (Iowa 2005). At least in a case where identification was at issue, the supreme court has stated that the testing of the strength of a witness's observation during a deposition is crucial. *Id.* (concluding the defendant may be absent during the part of the deposition where such testing of a witness's recollection of identification is made). Even the dissent in *Folkerts* noted a

---

[8] It is not clear whether the State also was aware of the conflict during the pretrial period.

deposition may be a "critical stage" of the proceedings. *Id.* at 766–67 (Cady, J., dissenting).

Here, Vaughn's first attorney was laboring under an actual conflict at the time the depositions of material witnesses, including the lead investigator, were taken. The attorney's torn allegiance during a critical stage of pretrial proceedings constitutes circumstances of such magnitude allowing us to presume prejudice. *See Mickens*, 535 U.S. at 166-167. Perhaps if the witnesses had been re-deposed by new defense counsel or the witnesses were only marginally important to the case, the "magnitude" of the circumstances would have been lessened, requiring proof of probable effect on the outcome. However, the witnesses were not re-deposed. Furthermore, placing a burden to prove the probable effect on the outcome of the trial on the defendant may require measuring the importance of the depositions in each specific case—an almost unworkable and impractical burden.[9]

Further, Vaughan has shown a particularized instance where his attorney's divided loyalties worked to his detriment. Henson told the State about Cline's information—an act which may have benefitted Cline[10] but hurt Vaughan's case. Henson's simultaneous representation continued for months after Cline's request to speak with the State, unlike the mere days in *Smitherman*. *See Smitherman*, 733 N.W.2d at 344. This continued concurrent representation during the pretrial period, discovery, and depositions allowed

---

[9] However, if the proper measure is the importance of the witnesses deposed to the case, we think Vaughan has still met his burden.
[10] While Cline had entered a guilty plea to one charge at this point, it is unclear what effect this disclosure had on the ongoing prosecution of his other charges.

Henson to "quietly inflict[] harm" for an extended period of time before the trial court allowed Henson to step aside. *See id.* at 348.

The length of time over which counsel had an actual conflict, in addition to taking depositions of material witnesses when counsel's allegiance was divided, allows us to presume prejudice. We therefore reverse and remand for a new trial with conflict-free counsel.[11]

Our supreme court has previously found the proper remedy for a conflict of interest arising from concurrent representation of a witness and defendant to be reversal and remand for new trial. *Watson*, 620 N.W.2d at 242. We decline the State's request in oral argument to find *Watson* no longer stands for the proposition that reversal is an available remedy under the Iowa Constitution in the case of actual conflict. We also do not agree with the State's argument that Vaughan has already received the remedy he seeks: conflict-free trial counsel. To the contrary, by granting a new trial, the discovery deadlines will begin anew and witnesses may be re-deposed free of conflict.

Vaughan's request goes farther, however, asking our court not only to order a new trial but also to exclude Cline's testimony. Vaughan did not move to exclude the testimony in a motion in limine before trial, object to Cline's testimony at trial, or raise the issue in his posttrial motions. At no point did the district court consider excluding Cline's testimony. *See Lamasters v. State*, 821 N.W.2d 856,

---

[11] Our supreme court recently reversed a trial court's disqualification of counsel for concurrent representation within the same firm. *State v. Smith*, 761 N.W.2d 63, 77 (Iowa 2009). Besides actual concurrent representation in this case, several other differences distinguish *Smith*, including non-conflicted co-counsel, voluntary waiver by the defendant, careful avoidance within the firm, and the speculative nature of the conflict. *Id.* at 72.

864 (Iowa 2012) (holding the indication of a district court's consideration of an issue was sufficient to preserve error).  Further, Vaughan cites to no authority to support his request for this particular remedy.   *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

We therefore remand without the exclusion of Cline's testimony.

**REVERSED AND REMANDED.**

Danilson, C.J., concurs; McDonald, J., concurs in part and dissents in part.

**MCDONALD, J.** (concurring in part and dissenting in part)

I concur there is sufficient evidence to support the jury's verdict but respectfully dissent from the conclusion Vaughan established a conflict of interest that infringed his constitutional rights. Indeed, it is not clear from this record that Vaughan established any actual conflict of interest.

Assuming for present purposes that Vaughan's first counsel, Henson, operated under a conflict of interest, I think it important to begin the discussion by framing the issue. Vaughan contends the district court erred in denying his motion in arrest of judgment and motion for new trial because Henson had a conflict of interest. He contends this conflict of interest infringed his rights arising under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. While his claim is not styled as an ineffective-assistance-of-counsel claim, we analyze his claim using that rubric. *See Smitherman*, 733 N.W.2d at 345-46 (stating where "a defendant alleges a violation of these constitutional rights due to an impermissible conflict of interest, our basic analysis does not change depending on how the defendant has framed the violation—i.e., as a claim of ineffective assistance of counsel or otherwise. The analysis we use . . . is largely the same analysis we would use if the defendant had specifically alleged a claim of ineffective assistance of counsel due to an impermissible conflict of interest"). Importantly, Vaughan does not claim that his second counsel, his trial counsel, also operated under a conflict of interest or was otherwise ineffective. We are thus not presented with the question of whether Vaughan's trial counsel could have or should have done more during pretrial proceedings or during trial in light of Henson's prior action.

The only question presented is whether, on this record, Vaughan has made a showing his pretrial counsel operated under a conflict of interest from which we can presume prejudice. *See id.* at 346. ("The analysis is basically one question: whether the defendant has made a showing whereby we can presume prejudice."). He has not.

The seminal Iowa case regarding impermissible conflicts of interest is *Watson*, 620 N.W.2d 233. In that case, one of the defendant's two trial attorneys represented an adverse witness in the defendant's case in an unrelated criminal contempt proceeding, although the representation of the adverse witness had concluded by the time of the defendant's trial. *Watson,* 620 N.W.2d at 235, 240. At trial, the defendant's other—and conflict-free—trial counsel cross-examined the adverse witness. *Id.* at 240-241. Counsel did not raise the issue of the conflict. The defendant did not object to the representation. *Id.* The court did not inquire about any conflict of interest. *Id.* The *Watson* court, relying almost exclusively on *Cuyler v. Sullivan*, 446 U.S. 335 (1980), held as follows:

> A trial court has the duty sua sponte to inquire into the propriety of defense counsel's representation when it knows or reasonably should know that a particular conflict exists. If an actual conflict existed and the trial court knew or should have known of the conflict, yet failed to make inquiry, reversal is required. If the record on appeal shows only the possibility of a conflict, then the case must be remanded for a determination as to whether an actual conflict existed and/or whether the defendant made a valid waiver of his right to independent counsel. If, on remand, an actual conflict is found, prejudice is presumed and reversal is mandated. If there is no indication that the trial court knew or should have known of an actual conflict, and defendant made no objection to his representation, then the defendant, in order to obtain a reversal on appeal, must prove that his counsel rendered ineffective assistance by proving that an actual conflict adversely affected counsel's performance.

*Watson,* 620 N.W.2d at 238 (citations and quotation marks omitted).

Subsequent to *Watson*, in *Mickens*, 535 U.S. 162, the United States Supreme Court addressed the constitutional implications of counsel operating under a concurrent conflict of interest where there was no objection to the representation or inquiry from the trial court. The court rejected the defendant's argument that *Sullivan* required reversal of a criminal conviction upon a showing that counsel operated under a concurrent conflict of interest without any showing the conflict adversely affected counsel's performance:

> As used in the remand instruction, however, we think "an actual conflict of interest" meant precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties. It was shorthand for the statement in *Sullivan* that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." 446 U.S. at 349–350. . . .
>
> Petitioner's proposed rule of automatic reversal when there existed a conflict that did not affect counsel's performance, but the trial judge failed to make the *Sullivan*-mandated inquiry, makes little policy sense. As discussed, the rule applied when the trial judge is not aware of the conflict (and thus not obligated to inquire) is that prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown. The trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any other way renders the verdict unreliable. Nor does the trial judge's failure to make the *Sullivan*-mandated inquiry often make it harder for reviewing courts to determine conflict and effect, particularly since those courts may rely on evidence and testimony whose importance only becomes established at the trial.
>
> Nor, finally, is automatic reversal simply an appropriate means of enforcing *Sullivan's* mandate of inquiry. . . . And in any event, the *Sullivan* standard, which requires proof of effect upon representation but (once such effect is shown) presumes prejudice, already creates an "incentive" to inquire into a potential conflict. In those cases where the potential conflict is in fact an actual one, only inquiry will enable the judge to avoid all possibility of reversal by either seeking waiver or replacing a conflicted attorney.

*Mickens*, 535 U.S. at 171-73.

As the majority notes, our supreme court revisited the issue of attorney conflicts of interest post-*Mickens* in *Smitherman*, 733 N.W.2d 341. There, the court addressed the question of the showing required to obtain relief where the district court held a *Watson* hearing. The court recognized that *Mickens* seriously undermined *Watson* and then held, under both the United States and Iowa Constitutions, the defendant was required to establish an actual conflict of interest that adversely affected challenged counsel's performance:

> We recognize our holding in *Watson* under the Sixth Amendment is impacted by the Supreme Court's decision in *Mickens*. Of course, *Watson* may still be valid under our state constitution. But we need not decide that question now because a different question is before us: namely, under what circumstances are we to presume prejudice when the trial court has performed an inquiry? We are convinced those circumstances must include the defendant's ability to show what was required in *Mickens*— adverse effect upon defense counsel's performance. While we were willing to presume prejudice without requiring adverse effect in *Watson*, we believe the facts of *Watson* are sufficiently distinguishable from this case so the reasons behind our holding in *Watson*, even if still viable after *Mickens* under our state constitution, are not applicable here. Under the circumstances in this case, we hold Smitherman must show adverse effect in order to prevail under either the Sixth Amendment or article I, section 10 of the Iowa Constitution.

*Smitherman*, 733 N.W.2d at 347. In distinguishing *Watson*, the court explained the harm sought to be prevented in *Watson* was a trial-related harm—that "confidence in the result of the verdict is undermined" where counsel is operating under an undisclosed conflict of interest. *Id.* at 348. The court explained that merely holding a hearing on the conflict "ameliorates the suspicion of harm and lessens the need for a rigid rule of automatic reversal." *Id.* So where does that leave Vaughan?

Although the State does not press the point, Vaughan has received all the relief our conflict-of-interest cases provide: his pretrial counsel operating under an alleged conflict of interest was replaced by admittedly conflict-free counsel who represented Vaughan during the remainder of pretrial proceedings and through trial. *See Mickens*, 535 U.S. at 173 (stating that the trial court can "avoid all possibility of reversal by either seeking waiver or replacing a conflicted attorney"); *Harris v. United States*, No. 3:07CR419, 2009 WL 5098970, at *4 (E.D. Va. Dec. 16, 2009) (holding the conflict-of-interest claim failed where counsel withdrew upon learning of his concurrent representation of the informant who caused defendant's arrest and where the defendant was represented by conflict-free counsel thereafter). The conclusion that no further relief is available is demonstrated by the relief the majority orders in this case: Vaughan's conviction should be vacated and this matter remanded for trial with conflict-free counsel. But isn't that what just occurred? The fact that no further relief is available under the *Mickens* and *Smitherman* conflict-of-interest cases leads me to conclude that the appointment of conflict-free counsel remedied the constitutional taint, if any, and rendered the conflict-of-interest cases—*Watson*, *Mickens* and *Smitherman*—inapplicable to this case. I would thus hold that where pretrial counsel operating under an alleged conflict of interest is replaced by counsel operating without any conflict of interest, the defendant must show ineffective assistance of counsel under the traditional *Strickland* standard to obtain relief. *See Triana v. United States*, 205 F.3d 36, 43-44 (2d Cir. 2000) (holding that conflicted counsel's "negligible participation" in trial "did not result in a breakdown in the adversarial process that our system counts on to produce just

results" where unconflicted counsel actually tried case (citation and quotation marks omitted)). I would further hold any such claim of ineffective assistance should be preserved for postconviction relief proceedings where the facts can be more fully developed and the issues more fully briefed. For example, whether Henson's conduct resulted in any prejudice if the postconviction record showed Cline was going to speak to law enforcement with or without Henson's assistance.

Although I conclude Vaughan's claim should be analyzed under the *Strickland* standard rather than the less demanding standard set forth in the conflict-of-interest cases, *see Smitherman*, 733 N.W.2d at 346 ("The difference can be summarized quite easily: A defendant has less to prove in conflict-of-interest cases. Whereas in a typical claim of ineffective assistance of counsel the defendant must prove prejudice by showing the result of the proceeding would have been different, a conflict of interest claim only requires the defendant to make a showing whereby we can presume prejudice."), to the extent the conflict-of-interest cases are applicable here, it is clear that *Smitherman* and not *Watson* is the controlling authority. The *Smitherman* court concluded that the mere holding of a *Watson* hearing without removing conflicted counsel sufficiently mitigated the risk of trial-related harm to no longer require automatic reversal. *See id.* at 348. That holding applies with greater force in this case. Here, the court did more than hold a hearing; the court granted pretrial counsel's motion to withdraw and appointed conflict free-counsel to represent defendant through the remainder of pretrial proceedings and at trial. At minimum, Vaughan

is thus required to make a showing of an actual conflict of interest that adversely affected defense counsel's performance. *See id.* at 347. He has not done so.

The majority asserts that Henson's representation of Vaughan for eighty days after Cline requested to speak to the authorities quietly inflicted harm on Vaughan's case. This is unsupported by the record. Cline did not provide Henson with the substance of the information. The assistant county attorney testified that law enforcement did not contact Cline until approximately two months after Cline's initial request due to the investigating officer taking a leave of absence. During this time, Henson continued to represent Vaughan in pretrial proceedings unaware of whether Cline spoke to law enforcement or what information Cline might have provided.

Henson testified that he did not become aware of any conflict until he saw the additional minutes of testimony identifying Cline as a witness. There is nothing in the record showing that Henson's representation of Vaughan during this eighty-day period was adversely affected by Henson's representation of Cline. For example, there is no indication that Henson failed to investigate factual and legal defenses to the charge. There is no indication that Henson failed to interview witnesses or conduct depositions. There is no indication that Henson's performance during the depositions was in any way deficient. We are not permitted to speculate or presume that Henson's performance was adversely affected; it is Vaughan's burden to make that showing, and he has not done so. *See, e.g.*, *Noe v. United States*, 601 F.3d 784, 790 (8th Cir. 2010) ("To make such a showing, the defendant must identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the

alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.").

The majority also contends that Vaughan has shown a particularized instance where Henson's allegedly divided loyalties worked to Vaughan's detriment—"Henson told the State about Cline's information—an act which benefitted Cline but hurt Vaughan's case." I disagree. First, the record does not support the conclusion that Cline's information benefitted Cline. As the majority notes, Cline's request to speak to law enforcement followed his guilty plea and sentencing in the matter in which Henson was representing him. Cline already had gained any concessions available to him in that matter prior to speaking to law enforcement.

Second, the record does not support the statement that Henson told the State "about Cline's information." In denying the motion in arrest of judgment, the district court found that Cline did not tell Henson the substance of the information Cline wanted to convey to the State, only that he wanted to speak to law enforcement. Thus, while Henson informed the State that Cline wanted to provide information, Henson did not know or communicate the substance of Cline's information.

Third, although the majority characterizes Henson's conduct as a concurrent conflict, Henson's representation of Cline concluded after sentencing in Cline's case. As the majority notes, this occurred prior to the time Cline requested Henson contact law enforcement and prior to the time Henson actually contacted law enforcement. At best, this is a matter involving only a potential

conflict between a former client and a current client. Claims regarding potential conflicts and non-concurrent conflicts should be analyzed under the *Strickland* prejudice standard. *See Mickens*, 535 U.S. at 175 (stating the *Sullivan* standard applies only where "counsel *actively represented* conflicting interests"); *see, e.g.*, *Potts v. United States*, 566 F. Supp. 2d 525, 532 (N.D. Tex. 2008) (explaining that *Sullivan* applies to concurrent conflicts and *Strickland* applies to all other conflicts of a "different ilk").

Even assuming the representations were concurrent, however, Henson's mere mention to law enforcement that Cline wished to speak with them is insufficient to establish an "actual conflict of interest" from which we can presume prejudice. *See, e.g.*, *People v. Serrano*, 952 N.Y.S.2d 669, 672 (N.Y. App. Div. 2012) (holding the defendant failed to establish a conflict-based claim of ineffective assistance of counsel where the public defender represented a confidential informant and the defendant). In a very similar case, the Massachusetts Court of Appeals concluded that there was no conflict of interest where defense counsel did not know the substance of an adverse witness's information and was unaware of the conflict:

> It is true that Keene represented the defendant after the defendant's arrest, prior to the defendant's hiring of McBride several months before trial. This fact establishes that there could have been a period where Keene represented both Lobello and the defendant. But this could not have given rise to a conflict, because, as the judge found, Keene was not aware of Lobello's status as an informant against the defendant until one week before trial—a point by which his activities on Lobello's behalf had long since ended. Since a conflict occurs when the independent professional judgment of trial counsel is impaired . . . by the interests of another client, common sense dictates that Keene's judgment could not have been impaired when he was not aware of the potentially divergent interests of his two clients. Moreover, there is no

> indication that Keene somehow gained access to privileged information through his representation of both the defendant and Lobello that was used to the defendant's detriment.

*Com. v. Teti*, 801 N.E.2d 279, 285 (Mass. App. Ct. 2004) (citation and quotation marks omitted). By way of another example, New York concluded that there was no impermissible conflict where counsel represented the defendant and an adverse witness but was actually unaware of the conflict:

> Whether a conflict operates on the defense is a mixed question of law and fact. Here, there is record support for the Appellate Division's conclusion that the potential conflict did not operate on the attorney's representation, and as such, the determination is beyond our further review. Albanese was unaware that the confidential informant was cooperating against Harris and although he advised the informant to continue cooperating with the District Attorney's office—clearly contrary to the interests of defendant Harris—the representation was not affected by the potential conflict. The grand jury testimony had been given before Albanese began his representation of the informant, and during Albanese's brief pretrial representation of Harris, he never learned the identity of the informant in the Harris case.
>
> Typically, a conflict requiring reversal exists when defense counsel simultaneously represents defendant and the primary prosecution witness. . . . Here, although the interests of the defendant and the informant were materially divergent, the record supports the lower courts' conclusion that defense counsel's unawareness of the potential conflict precludes a finding that he was somehow inhibited in single-mindedly pursuing Harris's best interests during the course of the representation. Put another way, there is nothing in the record to suggest that had Albanese earlier learned of the representation and withdrawn as Harris's attorney, subsequent counsel would have defended him in some more vigorous, less inhibited manner.

*People v. Harris*, 783 N.E.2d 502, 506-07 (N.Y. 2002).

I find the reasoning in these and other similar cases compelling. Accordingly, I concur in part and dissent in part.