# IN THE SUPREME COURT OF IOWA

No. 112 / 05-0692

Filed June 8, 2007

**STATE OF IOWA**,

Appellee,

vs.

**JOEL BRADFORD SMITHERMAN**,

Appellant.

_____

Appeal from the Iowa District Court for Hardin County, Jon Scoles, Judge.

Appeal from jury verdict for murder in the first degree. **AFFIRMED**.

Mark C. Smith, State Appellate Defender, and James G. Tomka, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Scott Brown, and Douglas Hammerand, Assistant Attorneys General, and Richard N. Dunn, County Attorney, for appellee.

**CADY, Justice.**

In this case we must determine if the defendant's constitutional rights to conflict-free counsel were violated. In addition, we must determine whether there was sufficient evidence to convict the defendant of first-degree murder. Finding no constitutional violation or problem pertaining to the sufficiency of the evidence, we affirm the defendant's conviction.

## I. Background Facts and Proceedings.

In 1990 law enforcement officers found Richard Tasler's skeletal remains buried on Joel Smitherman's property. As a result, and after a long investigation, the State finally charged Smitherman with Tasler's murder on May 13, 2004. The court appointed the Marshalltown Public Defender's Office (MPDO) to represent Smitherman on May 13, 2004. On May 17 MPDO attorneys Melissa Anderson and Ray Reel filed their appearances on behalf of Smitherman.

On May 18, 2004, a prison inmate—Jason Williamson—came forward with information related to the prosecution of Smitherman. Williamson was in jail on felony and serious misdemeanor charges. Reel represented Williamson on his serious misdemeanor charges, and a private attorney represented Williamson on his felony charges. Williamson was interviewed by law enforcement officials on May 19, 2004. The next day the State informed the MPDO that Williamson would likely be added to the trial information as a witness for the prosecution.

On May 21, 2004, Anderson and Reel discussed the addition of Williamson as a witness. Anderson told Reel she did not want to know anything about the potential witness or the pending cases against him. Anderson even indicated she was not sure of Williamson's name. As a

result of their conversation, Reel immediately made the decision to withdraw from representing Williamson and was relieved of that duty by May 25.[1]

Reel additionally withdrew from representing Smitherman on May 27.[2] At this time, Reel was replaced by Shannon Leighty, who also worked for the MPDO. Thereafter, Leighty represented Smitherman as "second chair" to Anderson.[3] At all times in the present proceeding Anderson remained as primary counsel to Smitherman. The MPDO represented Smitherman continually from the day he was charged—May 13, 2004—until the day he was sentenced—April 8, 2005. Specifically, Reel represented Smitherman from May 17 to May 27, and Reel represented Williamson until May 25. Thus, Reel simultaneously represented Williamson and Smitherman from May 17 to May 25, although he was not informed that Williamson would be a potential witness against Smitherman until May 20, and by May 21 he had made the decision to withdraw from Reel's case. The MPDO, of course, simultaneously represented Smitherman and Williamson from May 13

---

[1]The record does not exactly disclose when Reel withdrew from representing Williamson, although a search performed on Iowa Courts Online indicates the court relieved the MPDO of further responsibility in Williamson's case on May 25. Anderson testified that "[u]pon hearing that [Williamson would be a potential witness], I informed Ray [Reel] that he needed to withdraw immediately from that case. I don't know for certainty if that was filed on the 21st of May or if it was the early part of the following week." Anderson also testified that "[Reel] withdrew from Williamson within 24 hours [of hearing that Williamson might be a potential witness]." Thus, it appears from these statements that Reel *made the decision* to withdraw on May 21, but did not file his withdrawal or receive permission to withdraw until May 25.

[2]The "Amended and Substituted Appearance" was mailed on May 25, 2004, but was not filed with the Hardin County district court clerk until May 27, 2004.

[3]Leighty was eventually replaced by Rebecca Hanson, also an attorney for the MPDO. This replacement took place on February 11, 2005, and was the result of Leighty transferring offices.

(when the court appointed the MPDO to represent Smitherman) until May 25 (when the court in Williamson's matter relieved the MPDO of further responsibility in Williamson's case).

Because of our decision in *State v. Watson*, 620 N.W.2d 233 (Iowa 2000), and the circumstances facing the parties, the State made an application for a "*Watson* hearing" on June 11, 2004. In its application the State set forth the facts above, acknowledged that Reel had been replaced by Leighty, and stated "[t]he State has also been assured that Ray Reel will be separated from the current case so that no actual conflict arises." The district court held a hearing on the matter on June 28, 2004. At the hearing the state prosecutor, Scott Brown, testified for the State and said:

> Judge, we filed this application for [a] *Watson* hearing to raise this issue. I don't want the court to read into that we're wishing the Public Defender's Office in Marshalltown to have to be removed from this case. That's not our intention in filing it. We think we are required to do it whenever there is a potential conflict of interest so all this is laid out on the record and Mr. Smitherman is aware of the relationship between his attorney and a potential prosecution witness.

Likewise, the attorneys for the MPDO argued its representation did not violate our holding in *Watson*, and that a "Chinese Wall," or an office procedure to insulate Reel from the case, had been put into place.

At the hearing, the court specifically addressed Smitherman as follows:

> THE COURT: Mr. Smitherman, have you had a chance to discuss these issues with your attorney Ms. Anderson?
> THE DEFENDANT: Yes, I have.
> THE COURT: Do you have any concerns about Ms. Anderson continuing in your defense in this case?
> THE DEFENDANT: No. I'm just disappointed in the loss of Mr. Reel. . . .

THE COURT: So you understand, however, that because of Mr. Reel's representation of [Williamson], he is prohibited from proceeding in this case?

THE DEFENDANT: Yes, sir.

THE COURT: And even though there was a short period of time, about maybe a week or so, where Mr. Reel represented both you and [Williamson], you're comfortable with the Marshalltown Public Defender's Office proceeding in this case?

THE DEFENDANT: Yes, I am.

As a result of the hearing the district court entered an order on June 30, 2004 concluding "there is no actual or potential conflict of interest," and "that the representation of the defendant by Ms. Anderson and Ms. Leighty is not precluded by the court's holding in *Watson*." The case proceeded to trial and the jury found Smitherman guilty of first-degree murder. On April 8, 2005 Smitherman was sentenced to life in prison without parole.

**II.  Issues and Standard of Review.**

On appeal, Smitherman makes two arguments: (1) his state and federal constitutional rights were violated because of an impermissible conflict of interest that was created by the MPDO's simultaneous representation of the prosecution's witness and himself, and (2) there was insufficient evidence to convict him of first-degree murder. Our review is de novo when the defendant alleges a conflict of interest implicating the right to counsel. *See State v. Powell*, 684 N.W.2d 235, 238 (Iowa 2004); *Pippins v. State*, 661 N.W.2d 544, 548 (Iowa 2003). Our review is for errors at law when the defendant challenges his or her conviction based on the sufficiency of the evidence. *See State v. Speicher*, 625 N.W.2d 738, 740 (Iowa 2001). "[A] jury verdict is binding on us when supported by substantial evidence," and "evidence is substantial if it could convince a rational jury of a defendant's guilt beyond a

reasonable doubt." *Id.* at 740–41 (citing *State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998); *State v. Casady*, 597 N.W.2d 801, 804 (Iowa 1999)). We must view the record in the light most favorable to the State, and consider the evidence supporting not just guilt, but innocence, too. *Id.* at 741 (citing *Hopkins*, 576 N.W.2d at 377).

### III. Conflict of Interest.

Conflict-of-interest claims are typically raised in ineffective-assistance-of-counsel claims. *See, e.g.*, *Mickens v. Taylor*, 535 U.S. 162, 164, 122 S. Ct. 1237, 1239–40, 152 L. Ed. 2d 291, 299 (2002) ("[Petitioner] alleg[ed], *inter alia*, that he was denied effective assistance of counsel because one of his court-appointed attorneys had a conflict of interest at trial."). Smitherman, however, has not specifically alleged an ineffective-assistance-of-counsel claim. Nevertheless, he has alleged a violation of his federal Sixth Amendment rights, and his corresponding rights under article I, section 10 of Iowa's Constitution due to an impermissible conflict of interest.[4] When a defendant alleges a violation of these constitutional rights due to an impermissible conflict of interest, our basic analysis does not change depending on how the defendant has framed the violation—i.e., as a claim of ineffective assistance of counsel or otherwise. The analysis we use in this case is largely the same analysis we would use if the defendant had specifically alleged a claim of ineffective assistance of counsel due to an impermissible conflict of interest. *See Watson*, 620 N.W.2d at 235–37 (analyzing a conflict-of-

---

[4]These constitutional provisions safeguard the defendant's right to a fair trial, which expressly includes the guarantee to "assistance of counsel." Iowa Const. art. I, § 10; *see* U.S. Const. amend. VI (using the identical words "Assistance of Counsel"). The assistance of counsel, of course, implies the effective assistance of counsel. *See Mickens*, 535 U.S. at 166, 122 S. Ct. at 1240, 152 L. Ed. 2d at 300 ("[A]ssistance which is ineffective in preserving fairness does not meet the constitutional mandate . . . .").

interest claim under precedent based on claims of ineffective assistance of counsel due to a conflict of interest); *State v. Williams*, 652 N.W.2d 844, 847 (Iowa Ct. App. 2002) ("The foundation for this type of claim [(allegations of a conflict of interest)] is an alleged denial of an accused's constitutional right to effective assistance of counsel."). The analysis is basically one question: whether the defendant has made a showing whereby we can presume prejudice. *See Watson*, 620 N.W.2d at 238 (stating the "legal principles applicable to conflict-of-interest claims" and recognizing situations where prejudice is presumed, such as "on remand, [when] an actual conflict is found, prejudice is presumed and reversal is mandated"). If so, the defendant's constitutional rights have been violated and he or she is entitled to a new trial.

Notably, this analysis (whether as a specific claim of ineffective assistance of counsel due to a conflict of interest, or whether as a generic conflict-of-interest claim) is different than the typical two-part analysis for claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984).[5] The difference can be summarized quite easily: A defendant has less to prove in conflict-of-interest cases. Whereas in a typical claim of ineffective assistance of counsel the defendant must prove prejudice by showing the result of the proceeding would have been different, a conflict of interest claim only requires the defendant to make a showing whereby we can presume prejudice. *See, e.g., Mickens*, 535 U.S. at 174, 122 S. Ct. at 1245, 152 L. Ed. 2d at 306 (noting *Strickland* requires "in other ineffectiveness-of-counsel cases . . . a showing of

---

[5]The typical two-part test under *Strickland* asks (1) whether counsel performed an essential duty, and if not, (2) whether prejudice resulted. *See State v. Lane*, 726 N.W.2d 371, 393 (Iowa 2007).

probable effect upon the outcome of trial," but that in conflict of interest cases such prejudice is presumed when there's a showing of defense counsel's "defective performance").[6]  Thus, in this case we are looking to see whether Smitherman has made a showing whereby we can presume prejudice.

In *Watson*, we held that under the Sixth Amendment we could presume prejudice when there was an actual conflict the trial court should have known about, and yet failed to inquire into.  620 N.W.2d at 237–39.  In so holding, we examined United States Supreme Court precedent, and cases interpreting that precedent, to reject a requirement that the defendant must show his counsel's performance was adversely affected by the conflict of interest.  *Id.* at 236–38.  We said,

> Our review of the cases leads us to agree with those courts holding that where the trial court knew or should have known of a particular conflict, reversal is required

---

[6]Perhaps this was best explained in the following:

> [I]t also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation. As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
>
> There is an exception to the general rule. We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceedings. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict.
>
> We have held in several cases that "circumstances of that magnitude" may also arise when the defendant's attorney actively represented conflicting interests.

*Mickens*, 535 U.S. at 166, 122 S. Ct. at 1240–41, 152 L. Ed. 2d at 300–01 (internal citations omitted).

without a showing that the conflict adversely affected counsel's performance, even though no objection was made at trial.

*Id.* at 238. Instead, all that was required was an actual conflict, which we defined as " 'a situation conducive to divided loyalties.' " *Id.* at 239 (quoting *Smith v. Lockhart,* 923 F.2d 1314, 1320 (8th Cir. 1991)).

Less than two years later, however, the United States Supreme Court reached a contrary conclusion. In *Mickens,* the Supreme Court reviewed its precedent and concluded

> the [*Cuyler v.*] *Sullivan*[, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980),] standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.

535 U.S. at 172 n.5, 122 S. Ct. at 1244 n.5, 152 L. Ed. 2d at 305 n.5. Thus, when the trial court failed to conduct an inquiry (or even if it did conduct an inquiry), the Supreme Court required the defendant to show his counsel's performance was adversely affected by the conflict of interest before it would presume prejudice and find a Sixth Amendment violation warranting reversal. *Id.* at 172–73, 122 S. Ct. at 1244–45, 152 L. Ed. 2d at 304–05.

We recognize our holding in *Watson* under the Sixth Amendment is impacted by the Supreme Court's decision in *Mickens.* Of course, *Watson* may still be valid under our state constitution. *See State v. Cline,* 617 N.W.2d 277, 285 (Iowa 2000) (recognizing we can provide greater protections under our state constitution), *disavowed on other grounds by State v. Turner,* 630 N.W.2d 601, 606 n.2 (Iowa 2001). But we need not decide that question now because a different question is before us: namely, under what circumstances are we to presume

prejudice when the trial court has performed an inquiry? We are convinced those circumstances must include the defendant's ability to show what was required in *Mickens*—adverse effect upon defense counsel's performance. While we were willing to presume prejudice without requiring adverse effect in *Watson*, we believe the facts of *Watson* are sufficiently distinguishable from this case so the reasons behind our holding in *Watson*, even if still viable after *Mickens* under our state constitution, are not applicable here. Under the circumstances in this case, we hold Smitherman must show adverse effect in order to prevail under either the Sixth Amendment or article I, section 10 of the Iowa Constitution.

The differences between this case and *Watson* are immediately apparent. Most notably, the trial court in this case conducted an inquiry into the conflict in order to protect the defendant's rights. This inquiry, together with Smitherman's lack of objection, casts a different light on the need for the automatic reversal rule we recognized in *Watson*. When conflicted defense counsel represents a defendant during the course of the trial because the court did not conduct an inquiry into the conflict, our confidence in the result of the verdict is undermined. *Mickens*, 535 U.S. at 168, 122 S. Ct. at 1241–42, 152 L. Ed. 2d at 301–02. Joint representation is inherently suspect because it can effectively seal the lips of the attorney on critical matters and tend to prevent the attorney, often in very subtle ways, from providing effective representation. *Id.* (citing *Holloway v. Arkansas*, 435 U.S. 475, 489–90, 98 S. Ct. 1173, 1181, 55 L. Ed. 2d 426, 438 (1978)). The nature of the conflict makes it difficult to effectively measure the harm visited on the trial by conflicted counsel. *Id.* On the other hand, when the court makes an inquiry in

some form into the conflict, the attorney is no longer quietly inflicting the inherent harm into the trial that supports the automatic reversal rule. Instead, a prophylactic inquiry by the court ameliorates the suspicion of harm and lessens the need for a rigid rule of automatic reversal. *See Holloway*, 435 U.S. at 489, 98 S. Ct. at 1181, 55 L. Ed. 2d at 437 (noting the rigidity of such a rule because a conviction could be reversed even if no actual prejudice is shown and the defendant is clearly guilty). Additionally, the lack of objection by the defendant, or explicit acquiescence in his representation,[7] makes it more palatable to impose an obligation to show an adverse effect on defense counsel's performance.

In this case, all parties and the court were manifestly aware of the conflict, and took several precautions to assure the defendant's rights were not violated. These precautions included setting up a "Chinese wall" between Reel and the rest of the MPDO, and ending the MPDO's representation of Williamson and Reel's representation of Smitherman. In addition, all parties, including the defendant himself, believed the situation did not present an impermissible conflict of interest. Finally, while Reel and the MPDO represented both Smitherman and Williamson at the same time, such simultaneous representation was very brief.

---

[7]The State additionally argued Smitherman waived his right to conflict-free counsel. *See Holloway*, 435 U.S. at 483 n.5, 98 S. Ct. at 1178 n.5, 55 L. Ed. 2d at 433 n.5 ("A defendant may waive his right to the assistance of an attorney unhindered by a conflict of interest."). This issue is moot in light of our holding. Therefore, we express no opinion as to whether Smitherman's acquiescence in his representation amounted to a valid waiver of his right to *conflict-free* counsel, *see United States v. Brekke*, 152 F.3d 1042, 1045 (8th Cir. 1998) (noting such a waiver "must be knowing, voluntary, and intelligent"), or whether such a waiver is adjudged by the same exacting standards we have required in order to waive the right to counsel, *see Hannan v. State*, ___ N.W.2d ___, ___ (Iowa 2007).

Moreover, even if Reel was required to withdraw and such withdrawal was imputed to the MPDO,[8] the imputed disqualification rule Smitherman cites does not itself establish a constitutional violation.  *See Nix v. Whiteside*, 475 U.S. 157, 165, 106 S. Ct. 988, 993, 89 L. Ed. 2d 123, 134 (1986) ("[B]reach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."); Iowa Code of Prof'l Responsibility, DR 5-105(E) (imputing the disqualification of one lawyer to the lawyer's firm); *see also Lambert v. Blodgett*, 393 F.3d 943, 986 (9th Cir. 2004) ("[T]he Supreme Court has never applied the ethical imputed disqualification rule in Sixth Amendment analysis.").  In addition, we are not persuaded by Smitherman's argument that the MPDO's investigator labored under an impermissible conflict of interest.  The Sixth Amendment guarantees the right to conflict-free counsel, and Smitherman has not shown how the MPDO investigator was involved in Williamson's and Smitherman's cases, or how such involvement would establish a violation of the constitutional right to conflict-free counsel.

Of course, the most important point is that Smitherman has not shown his counsel was adversely affected by the conflict of interest. There is nothing in the record to suggest defense counsel's performance

---

[8]We express no opinion as to whether the MPDO was required to withdraw under our old or new ethical rules, although we note several authorities recognize that different rules should govern the imputation of conflicts among government lawyers. *See United States v. Reynoso*, 6 F. Supp. 2d 269, 272 (N.Y.S.D. 1998) (discussing these authorities, and noting "The American Law Institute has also recognized that imputed disqualification under DR 5-105(D) [(it later became DR 5-105(E))] should not automatically apply to public defender offices"); Model Rules of Prof'l Conduct r. 1.11 cmt. 2 (2003) ("Because of the special problems raised by imputation within a government agency, paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it would be prudent to screen such lawyers."); Iowa R. of Prof'l Conduct 32:1.11 cmt. 2 (same).

was affected by a conflict of interest. Smitherman argues otherwise, and says he would have accepted a plea agreement to a lesser charge had his counsel acted differently. He also argues a more zealous defense would have found additional exculpatory evidence and exploited the weaknesses in the State's case. This, however, is not a showing that his counsel was adversely affected by a conflict of interest. There is simply no connection between the alleged conflict and the alleged deficiencies in Smitherman's defense. *See, e.g., United States v. Stitt*, 441 F.3d 297, 303 (4th Cir. 2006) (recognizing a three-part test to determine whether adverse effect has been shown, which includes a determination that the alleged deficiency is causally connected to the conflict).

Smitherman's basic argument is that there was a conflict under *Watson* that requires us to reverse his conviction. As we have already stated, we are not willing to follow *Watson* in these circumstances, even under article I, section 10 of the Iowa Constitution. Because we require adverse effect to be shown under these circumstances, it would not matter if we found Smitherman's counsel labored under an "actual conflict" as we defined that term in *Watson* (a situation conducive to divided loyalties), because his defense counsel did not labor under an "actual conflict" as the United States Supreme Court has defined the term (one requiring adverse effect). As a result, Smitherman's constitutional rights to conflict-free counsel were not violated.

### IV. Sufficiency of the Evidence.

Smitherman claims there is insufficient evidence to support the verdict. *See State v. Legear*, 346 N.W.2d 21, 23 (Iowa 1984) (recognizing substantial evidence must exist to uphold the verdict). The State initially argues Smitherman cannot raise this argument because he failed to

preserve error. We will assume Smitherman preserved error to reach the merits of his argument.

In this case, Smitherman primarily attacks the State's theory of the case. The State theorized that Smitherman was paid to shoot Tasler in 1986 because Tasler had become a liability to an individual named Tim Houser, who was Tasler's partner in a cocaine dealing business. There was evidence to suggest Smitherman lured Tasler to go with him on a trip, that he shot Tasler five times in the back of the head, and that he then buried Tasler's body on his property near Union, Iowa. Furthermore, evidence revealed Smitherman lied about Tasler's whereabouts following the murder, and told others he had shot "someone." Smitherman also attempted to bribe a cell mate to lie for him about the matter.

Smitherman largely points to evidence at trial that Houser, not Smitherman, had the motive to kill Tasler. Furthermore, Smitherman points to evidence that suggested Tasler planned his own disappearance, and had plans to disguise his physical appearance through plastic surgery. Moreover, some witnesses testified Tasler was seen after the date the State claimed he was killed by Smitherman.

The jury had two distinct theories presented at trial. They were required to sift through the conflicting evidence and assess the credibility of the witnesses. In the end, it is clear the verdict revealed the jury rejected Smitherman's theory and evidence, and found the State's evidence to be more compelling. Upon our review of all the evidence, we conclude substantial evidence supports the verdict.

**V.  Conclusion.**

We need not determine the validity of the defendant's alleged waiver because we find the defendant has failed to show his counsel's performance was adversely affected by the alleged conflict of interest in this case.  As a result, he has not established a violation under the Sixth Amendment or the Iowa Constitution and is not entitled to a new trial.  Finally, there was sufficient evidence to convict him of first-degree murder.

**AFFIRMED.**

All justices concur except Appel, J., who takes no part.