**IN THE COURT OF APPEALS OF IOWA**

No. 13-1826
Filed July 16, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RENEE ROCHELLE OPPERUD,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Peter B. Newell, District Associate Judge.

Renee Opperud appeals from judgment and conviction entered upon her plea of guilty to third-degree theft. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Heather Ann Mapes, Assistant Attorney General, Kasey E. Wadding, County Attorney, and Jill Dashner, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

### I. Background Facts.

On February 14, 2013, Opperud wrote a check in the amount of $524.30 to the Wash House Salon & Spa for goods and services. The check was returned because it was written on a closed account. The salon owner sent notice by certified mail, demanding payment within ten days. Opperud did not respond.

On April 18, 2013, Officer Ross Long received a phone call from The Wash House regarding Opperud's failure to pay. Officer Long was able to obtain a current phone number and address for Opperud and left a message informing her of his involvement in the matter and asking her to call him back. Opperud returned his phone call the following day, claiming physical injuries and stating she did not have money to pay for the goods and services, but that she could pay in full by May 6, 2013. Opperud had not paid by May 18 and a warrant was requested for her arrest.

Opperud did not appear for a scheduled arraignment on July 26, 2013. She sent a letter to the court on that date claiming she was unable to appear due to physical injury, and asked for a one-month continuance.

On August 20, Opperud filed a written plea of not guilty, stating her address was the county jail.

On August 27, Opperud filed a written guilty plea, which provides in part, "The State agrees upon my plea of guilty that I may be released for a week long furlough pending my sentencing hearing."

Sentencing was scheduled for September 3, but Opperud requested a fifteen-day delay.

On September 20—the rescheduled date for sentencing—Opperud did not appear. Her attorney informed the court Opperud had called her office reporting she was on her way to the emergency room for several physical ailments. The attorney requested documentation of treatment in the emergency room to submit with a request for continuance. A letter from a chiropractor was received. The following appears from the record of the September 20 hearing:

> THE COURT: I think this matter was set originally on the 9th day of July, and Ms. Opperud wrote the Court and indicated that she needed a continuance because of her employment and a flood, water, mold in her basement. The Court continued it to the 26th day of July for an arraignment.
> And then the Defendant, Ms. Opperud, again asked to continue that hearing date, saying that she was sick; she had a gas leak in her house; she had thrown her back out. She asked for at least a month's continuance. The Court didn't grant that second request for a continuance. Ordered a warrant to issue. Set bond in the amount of $2,500, and she was taken into custody on that on the 5th day of August.
> She asked for a bond review and the Court denied that based on her prior failure to appear and extensive criminal history.
> I think she's aware that the State is requesting that she go to prison on this charge.
> [PROSECUTOR]: Yes, Your Honor.
> THE COURT: And I think that her prior criminal history involves a number of impeachable offenses. So, I'm going to deny the application for a continuance of the matter.
> I'll go ahead and issue a warrant for the Defendant's arrest. . . . If she does actually have a medical condition that she's being treated for, the State is willing to have the warrant withdrawn, and we can do that.

On September 25 the warrant was withdrawn as the "court is advised that the defendant has provided verification that she was undergoing medical treatment on the 20th of September."

On October 7, this handwritten letter was faxed to the court:

> Attention:
> Bremer Co. District Court
> Due to inability and false written documentation from [defense counsel] I am requesting an Atty. who can honestly prepare and facilitate proper legal witnesses in my behalf for final hearing due to my so called lawyers ability to supeona [sic] and truthfully convey to the court in a timely manner for sentencing
> Sincerely Renee Opperud

On October 9, defense counsel filed a motion to continue the sentencing hearing for one week due to her client's statement that she had employment and housing obligations that prevented her from being available on October 11, 2013. The motion was granted. Sentencing was re-scheduled. The court took no action on Opperud's faxed letter.

Sentencing took place on October 25. Opperud's counsel argued for a more lenient sentence. Opperud made a statement of allocution. She had the opportunity to follow up but made no complaints about her attorney. Sentence was entered and Opperud appeals.

Opperud contends her case should be remanded to the district court for an inquiry about a possible conflict of interest.

**II. Scope of Review.**

The issue raised is based upon the defendant's Sixth Amendment right to counsel and our review is thus de novo. *State v. Powell*, 684 N.W.2d 235, 238 (Iowa 2004).

**III. Discussion.**

Opperud argues her "accusation of unethical conduct by defense counsel should have alerted the district court of the need to inquire further into a possible

conflict of interest." Upon our de novo review of this record, we conclude remand is not warranted.

A conflict of interest "places a defense attorney in a situation inherently conducive to divided loyalties. The phrase 'conflict of interest' denotes a situation in which regard for one duty tends to lead to disregard of another." *Pippins v. State*, 661 N.W.2d 544, 549 (Iowa 2003) (citation and internal quotation marks omitted). Opperud relies upon our ruling in *Connor v. State*, 630 N.W.2d 846, 848 (Iowa Ct. App. 2001), wherein we found the district court erred in failing to conduct an inquiry to determine if an actual conflict existed. In *Connor*, this court held, "when a defendant makes a timely objection, the trial court in a Sixth Amendment challenge has an obligation to conduct an adequate inquiry to determine whether an actual conflict exists. If a trial court fails to discharge this duty, prejudice is presumed."[1] 630 N.W.2d at 848. Connor, a postconviction relief applicant, had filed an ethics complaint against his attorney who had moved to withdraw from the postconviction case alleging it was frivolous. *See id.* at 847. We are not convinced Opperud's single note to the court here is akin to Connor's filing an ethics complaint against counsel and the court's denial of his attempt to relate the facts of the complaint to the postconviction court. *See id.* at 849. ("The record shows Connor filed an ethics

---

[1] In *State v. Smitherman*, 733 N.W.2d 341, 347 (Iowa 2007), the court noted "[i]n [*State v. Watson*, 620 N.W.2d 233 (Iowa 2000)], we held that under the Sixth Amendment we could presume prejudice when there was an actual conflict the trial court should have known about, and yet failed to inquire into." *Watson*, however, "was impacted" by the United States Supreme Court ruling in *Mickens v. Taylor*, 535 U.S. 162, 172-73 (2002) ("[W]hen the trial court failed to conduct an inquiry (or even if it did conduct an inquiry), the Supreme Court required the defendant to show his counsel's performance was adversely affected by the conflict of interest before it would presume prejudice and find a Sixth Amendment violation warranting reversal.). *Smitherman*, 733 N.W.2d at 347.

complaint against [postconviction counsel] and that he attempted to relate the facts of the complaint to the district court but was denied the opportunity to do so."). *Cf. Smitherman*, 733 N.W.2d at 348 ("In this case, all parties and the court were manifestly aware of the conflict, and took several precautions to assure the defendant's rights were not violated.").

Moreover, Opperud made no complaint about her attorney at the eventual sentencing hearing although the opportunity to do so was provided at allocution. Under the circumstances of this case, including Opperud's numerous requests to delay the proceedings, her counsel's successful efforts to obtain new sentencing dates, and counsel's representation at the sentencing hearing, we conclude the district court did not have sufficient reason to know of a possible conflict of interest.[2]  We therefore affirm.

**AFFIRMED.**

---

[2] We note, too, that "a defendant must generally establish prejudice when denied substitute counsel unless the defendant was completely denied counsel or counsel had a conflict of interest." *State v. Boggs*, 741 N.W.2d 492, 507 (Iowa 2007).  As was the case in *Boggs*, Opperud does not claim she was denied counsel, her counsel had an irreconcilable conflict, or failed to represent her at the sentencing hearing. *See id.*  And she has made no showing that she suffered prejudice. *See id.* (explaining the existence of prejudice is evaluated under the same standard as a claim of ineffective assistance of counsel).