# IN THE COURT OF APPEALS OF IOWA

No. 17-1526
Filed March 20, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CEDRIC R. WHITMIRE,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Timothy O'Grady, Judge.

Cedric Whitmire appeals his convictions for sexual abuse in the third degree, pimping, willful injury causing bodily injury, domestic abuse assault by strangulation causing bodily injury, and possession of marijuana. **AFFIRMED.**

Katherine Kaminsky Murphy of Kate Murphy Law, PLC, Glenwood, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

Considered by Vogel, C.J., Vaitheswaran, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

Cedric Whitmire appeals his convictions for sexual abuse in the third degree, pimping, willful injury causing bodily injury, domestic abuse assault by strangulation causing bodily injury, and possession of marijuana. Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

From the evidence presented at trial, the jury could have found the following. M.C. lived with her "boyfriend," Cedric Whitmire. M.C. worked as a prostitute, and Whitmire was her pimp. They posted ads on the internet, and clients ("johns") would arrange to meet M.C. for "dates."[1] M.C. "had sex with johns for money and then [she] would give all [the] money to [Whitmire]."

On November 7, 2016, M.C. told Whitmire she "didn't want to do it anymore." Whitmire got upset and punched her in the face. M.C. was "bleeding everywhere." She asked Whitmire to take her to the hospital because she knew her nose was broken, but Whitmire refused and "hit [her] harder." M.C. used a blanket to try to stop the bleeding and laid down on the bed and "kind of passed out a little bit." She woke up to Whitmire on top of her, "having anal sex with [her]." He said she "had been a bad girl" and needed to be punished. M.C. told him to stop, but he refused.

When he finished, Whitmire took M.C.'s phone and told her, "[D]on't go anywhere, you're locked in." Whitmire left to go to work at his job at a roofing company. M.C. got up and "cleaned the blood up"; "the blood was everywhere."

---

[1] Whitmire drove M.C. to hotels, and he waited in his truck or in the lobby while M.C. met the john for a date.

When Whitmire came home, "he was mad" because he had lost money at the casino, and he told M.C. she "had to work." M.C. "didn't want to," and they "got into another fight."

Eventually, they arranged for M.C. to meet with Greg Jones. Because M.C.'s face "was a mess," Whitmire came up with the idea to have the contact take place at his apartment. Whitmire gave M.C. tattoo-covering makeup to apply to her face to cover the bruises. Jones recalled M.C. appeared to have bruises under her eyes and a swollen nose; M.C. told him she had been in a car accident. Jones and M.C. had sex, and he left money on the counter before leaving. Whitmire came back, took the money, and told M.C. "good job." Then M.C. showered and they "went and got dope" at a friend's house.[2] When M.C. went inside the house to get drugs, people made comments about her face looking "like that guy off of *Goonies*." She "lied to them and said [she] was in a car accident" because she "didn't want them to go out to the car and beat [Whitmire] up."

Whitmire and M.C. had sex at some point the next day. M.C. told him to stop, and Whitmire "got really angry." He called her a "meth whore," said she had "sex with animals," and told her "no man will ever want [her]." Whitmire kicked her while she was on the ground crying, and he "was just laughing."

Later, they got into another fight because M.C. "wanted to leave." Whitmire hit her in the face, choked her, and kicked her while she was on the ground. When M.C. grabbed her stuff and piled it up, Whitmire grabbed her by the throat so hard she "could not breathe." M.C. was "really, really scared" and "didn't know if [she]

---

[2] M.C. testified she was "addicted to methamphetamines."

was gonna get out of there alive." She started screaming, and Whitmire told her to take a shower to "get all those demons off you." Whitmire told M.C. to "hurry up and get ready" because she "had to go on a call at the Super 8 motel." M.C. tried "to talk him out of it" because she "didn't want to go." Whitmire grabbed her by the hair and told her, "You're gonna make this money," "you're gonna do this call."

Whitmire drove M.C. to the Super 8, gave her a condom, and said he would "be out here waiting." M.C. walked in and "acted like [she] was gonna walk up the stairs." Then she went to the hotel clerk and asked if she could call the police. M.C. called 911 and her grandmother. An ambulance took her to the hospital. She said Whitmire had assaulted her. Initially, M.C. denied that she had been sexually assaulted, but then she realized that even though she loved and cared about Whitmire, she "said no" and she "didn't want to have sex with him."

M.C. spent "four, maybe five" days in the hospital after being admitted on November 10. Upon her admittance, officers observed she was "scared," "crying," "very fearful, shaken," and in "a lot of physical pain." She had injuries to her ribs, back, face, shoulder, neck, leg, and arms. Her nose was broken. Seminal fluid was found near her rectum and in her vagina.

Police found M.C.'s phone in Whitmire's vehicle. The phone records showed arrangements for meetings and sexually-explicit texts. Marijuana and drug paraphernalia were found inside his apartment. The apartment also contained blood splattered on the walls and floor, bloody paper towels in the trash, and a bloody towel in a hamper.

Whitmire told police M.C. had lived with him for "about . . . two weeks," and he was "trying to help her out, get her out of the prostitution/drug game." Whitmire

said the Super 8 arrangement was a "ruse" to get M.C. out of the apartment. He said M.C.'s money "was her money," but she gave him "a couple bucks here or there from the prostitution." Whitmire mentioned that M.C. "had been beat up in the past."

The State filed a trial information setting forth a number of charges against Whitmire. Following a four-day trial, a jury found Whitmire guilty of sexual abuse in the third degree, pimping, willful injury causing bodily injury, domestic abuse assault by strangulation causing bodily injury, and possession of marijuana. A jury subsequently found him to be a habitual offender. The trial court denied Whitmire's motions for new trial and arrest of judgment and entered judgment and sentence.

Whitmire appeals. Additional facts specific to the claims raised on appeal will be set forth below.

## II.     Scope and Standards of Review

"Our review is de novo when the defendant alleges a conflict of interest implicating the right to counsel." *State v. Smitherman*, 733 N.W.2d 341, 345 (Iowa 2007). However, "[w]hether the facts show an actual conflict of interest or a serious potential for conflict is a matter for trial court discretion." *State v. McKinley*, 860 N.W.2d 874, 878 (Iowa 2015) (citation omitted). "We review these conflict-of-interest determinations for an abuse of discretion." *Id.*

We review ineffective-assistance-of-counsel claims de novo. *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016). Whitmire must show (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The district court's evidentiary rulings are reviewed for abuse of discretion. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013).

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Showens*, 845 N.W.2d 436, 439–40 (Iowa 2014) (citation omitted). The jury's verdict is binding on appeal unless there is an absence of substantial evidence in the record to sustain it. *State v. Leckington*, 713 N.W.2d 208, 213 (Iowa 2006). Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *See Howse*, 875 N.W.2d at 688.

## III. *Effective-Counsel Challenges*

The Council Bluffs public defender's office was initially appointed to represent Whitmire but was relieved due to a conflict of interest because it had represented M.C.[3] The Sioux County public defender's office was then appointed to represent Whitmire, and he was represented by attorneys Jennifer Solberg, Sharese Manker, and Jason Dunn. Through counsel, Whitmire pled not guilty and asserted his right to speedy trial. He filed a motion to suppress, which the district court denied. He filed a motion to dismiss and motion in limine, which the district court also denied. He waived, and then reasserted, his right to speedy trial. Trial was set for April 25, 2017.

---

[3] An appointed attorney, Michael Hooper, was also allowed to withdraw.

On March 6, 2017, attorney Solberg alerted the court that Whitmire no longer wanted Solberg and Manker to represent him.[4] Following a hearing, the district court denied the motion. On April 10, Solberg moved to withdraw citing a conflict of interest. At the hearing, Solberg explained that a recent deposition revealed that M.C. was represented by the Council Bluffs public defender's office at a time when Solberg had also worked in the office. Solberg stated she "had zero contact with [M.C.] when the office here in Council Bluffs represented her. She was represented by a misdemeanor attorney. I didn't even know her name existed." However, according to Solberg, the deposition shed light on M.C.'s involvement "with the FBI and her credibility," which Solberg believed created an "integral issue" and "a conflict as being a part of that office." Manker, although she had not worked in the Council Bluffs office, felt that she was also conflicted because she had been working closely on the case with Solberg. Ultimately, the district court allowed the Sioux City public defender's office to withdraw and, on April 11, entered an order appointing attorney Chad Primmer.

Attorney Primmer requested trial be continued to May 16, 2017, the last day within the 90-day speedy trial limit, in order to prepare and "climb through" "the sheer volume of discovery" and also to file additional motions on behalf of Whitmire. Primmer acknowledged Whitmire did not want to continue trial but stated, "[I]f he wants to find a sooner date that his lawyer will not be as prepared

---

[4] Attorney Jason Dunn of the Sioux County public defender's office also represented Whitmire, but Whitmire does not appear to challenge Dunn's representation.

as he can be and it would be in his best interests to not have a trial date any sooner than May 16th." The court granted Primmer's request, and trial began on May 16.[5]

On appeal, Whitmire contends he was denied effective assistance of counsel because Solberg and Manker represented him for "nearly five months" while under a conflict of interest. Whitmire points out that Solberg had previously been employed in the Council Bluffs public defender's office, which was initially appointed to represent him but was relieved due to a conflict of interest. According to Whitmire, because Solberg had worked at the Council Bluffs public defender's office, "[s]he had a conflict of interest from the beginning of the case, and her association with her co-counsel [Manker] poisoned her as well." As a result, he claims he was "prejudiced by not having attorneys who were well-prepared, who had honed a positive relationship with him, who knew his case, and who were ready to proceed."

We disagree. Solberg informed the court she neither knew nor represented M.C. when she was employed by the Council Bluffs public defender's office. When Solberg later realized M.C. may have had more involvement with that office than merely a misdemeanor offense, Solberg, in an abundance of caution, relayed her concerns to the court. Moreover, at all times during her representation of Whitmire, Solberg was employed by the Sioux County public defender's office—not the Council Bluffs public defender's office. *But see State v. Watson*, 620 N.W.2d 233, 239 (Iowa 2000) (concluding concurrent representation of a defendant and an

---

[5] Following trial, at Whitmire's request, Primmer was allowed to withdraw, and the court appointed attorney Drew Kouris to represent Whitmire for the habitual-offender sentencing enhancement. Kouris moved to withdraw, stating he was "unable to explain the defendant's legal situation to the defendant's satisfaction." The court denied the motion.

adverse witness in a criminal case created divided loyalties and burdened the defense's pretrial investigation and trial strategy). There was no actual or serious potential for a conflict of interest. *Cf. McKinley*, 860 N.W.2d 874, 882 (Iowa 2015) (finding "other public defenders' *past* representation of the witnesses on matters unrelated to the crime charged . . . presents no risk of materially limiting [different public defenders'] representation").

In any event, Whitmire had conflict-free counsel for trial. Attorney Primmer was appointed on April 11, and trial began on May 16. *See State v. Vaughan*, 859 N.W.2d 492, 502 (Iowa 2015) ("It is undisputed that Vaughan received conflict-free counsel well before trial. Thus, even assuming his prior counsel labored under an actual conflict, Vaughan must show that this arrangement was somehow insufficient to cure the prior conflict. He has not done that."); *State v. Hicks*, 277 N.W.2d 889, 896 (Iowa 1979) ("Hicks was represented for over two months before trial and at trial by experienced, independent counsel; any conflicts of interest vanished once new counsel was appointed.").

But Whitmire claims as a result of the conflict of interest, "[i]t was impossible for [Primmer] to be prepared for trial, and he wasn't."[6] At the outset, we note that Whitmire refused to waive speedy trial, even after Primmer was appointed. We further conclude Whitmire has not shown Primmer was adversely affected by the alleged conflict of interest. There is nothing in the record to suggest Primmer's performance was affected by a conflict of interest. Whitmire alleges a more zealous defense would have exploited the weaknesses in the State's case or

---

[6] We view this claim as one of ineffective assistance of counsel with regard to Primmer.

produced more defense witnesses. "This, however, is not a showing that his counsel was adversely affected by a conflict of interest. There is simply no connection between the alleged conflict and the alleged deficiencies in [Whitmire's] defense." *Smitherman*, 733 N.W.2d at 349.

Whitmire also contends Primmer was ineffective in denying him the right to testify on his own behalf. We find the record inadequate to resolve this claim. Accordingly, we preserve it for possible postconviction relief proceedings. *See State v. McNeal*, 867 N.W.2d 91, 105 (Iowa 2015).

## IV. Evidentiary Rulings

Prior to trial, Whitmire filed a motion pursuant to Iowa Rule of Evidence 5.412 seeking to admit evidence of "specific instances of the alleged victim's past sexual behavior," including evidence that M.C. "was working" for "at least three separate pimps" before and after she met Whitmire and while she was on probation for a prostitution conviction, and that Whitmire "contracted a sexually transmitted disease [(STD)] from [M.C.]" *See* Iowa R. Evid. 5.412(a) (providing that evidence of the past sexual behavior of the alleged victim of sexual abuse is not admissible). According to Whitmire, the proffered evidence was "constitutionally necessary to his right to confront [M.C.] and to challenge her credibility." *See* Iowa R. Evid. 5.412(b)(1)(C) (providing exception for "[e]vidence whose exclusion would violate the defendant's constitutional rights"). The State resisted Whitmire's motion.

Following a hearing, the district court entered an order excluding most of the requested evidence, determining:

> Whitmire has not established that this evidence is relevant. [It] is not evidence of a fact of consequence in determining the action with a tendency to make the fact more or less probable than it would be

without the evidence. The risk of unfair prejudice arising from presentation of this evidence to the jury is far greater than any probative value that it could arguably carry. This proffered evidence does not bear on [M.C.]'s credibility.

However, the court concluded Whitmire "may present evidence that [M.C.] had other pimps working with her during the time frame of November 7, 2016 through November 11, 2016," determining it "may be evidence of a fact of consequence in determining the action with a tendency to make the fact more or less probable than it would be without the evidence."

Whitmire challenges both facets of the court's ruling on appeal. He claims his "entire theory of the case concerned [M.C.'s] decision to lie to officers because she was violating her probation." He further contends evidence that M.C. had an STD was relevant because Whitmire "admonished [her] not to engage in sexual activity as a result." Whitmire argues the court "permitted only such evidence under rule 5.412 that the State needed to make its case."

We disagree. Whether M.C. worked for different pimps before and after she met Whitmire was not relevant to whether she worked for Whitmire during the times alleged. M.C. testified she sometimes made her own arrangements to meet with clients, and she acknowledged working a job for someone other than Whitmire during the times alleged. And the court's ruling to allow evidence that M.C. worked with other pimps between November 7 and 11, 2016, further dispelled Whitmire's concern in that regard. Finally, whether M.C. had an STD is highly inflammatory and has little relevance to the issues before the jury. Upon our review, we conclude the district court did not abuse its discretion in excluding the challenged evidence. *See generally State v. Ogilvie,* 310 N.W.2d 192, 195 (Iowa 1981) (noting the

purposes of rule 5.412 are to (1) protect the privacy of victims; (2) encourage the reporting and prosecuting of sex offenses; and (3) prevent time-consuming and distracting inquiry into collateral matters).

## V.    *Sufficiency of the Evidence*

Whitmire challenges the sufficiency of the evidence to support the jury's verdicts.  He claims, "[T]he only nexus for evidence identifying [him] was the testimony of the alleged victim and her statements to others."  He argues, "Much of the State's case relied on [M.C.'s] word that [Whitmire] had used her phone because all of prostitution 'dates' were made using [M.C.'s] phone" and "that [Whitmire] was actually the operator of [M.C.'s] phone."  According to Whitmire, "The jury could not have found her testimony reasonable, and it could not have reasonably reached its verdicts."

The jury was presented with evidence that M.C. lived with Whitmire and she worked as a prostitute.  The two posted ads on the internet, and clients would arrange to meet M.C. for sex by text message.  According to M.C., Whitmire's phone did not work because the battery was "swollen."  Whitmire used M.C.'s phone "a lot," "[a]lmost all the time."  M.C. used the phone "sometimes," "like, one time [she] got to use the phone for a few hours, but otherwise, he used it almost all the time."  M.C. acknowledged she occasionally set up her own meetings because "[she] was told [she] had to."  When M.C. told Whitmire she did not want to do a job, he assaulted her.  He helped cover her bruises with tattoo-covering makeup so she could go on her next call.

In denying Whitmire's motion for judgment of acquittal, the district court noted the "conflicting evidence," observing, "There's evidence on both sides."

However, the trial court concluded, "[I]t's the jury's job to sort out conflicting evidence and make assessments of credibility." *See State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999) ("[I]t is for the jury to judge the credibility of the witnesses and weigh the evidence."). We, like the district court, determine the record contains substantial evidence to support the jury's findings of guilt. We affirm on this issue.

## VI.    Pro Se Claims

Whitmire challenges the circumstances surrounding the admission of defense exhibit 200, an "extraction report" from M.C.'s cellphone for the period between November 7 and November 10, 2016. The State initially objected to the admission of exhibit 200, stating, "[I]t could be used to impeach her, but it's hearsay . . . ." The district court admitted the exhibit, finding, "[I]t's not offered to prove the truth of the hearsay that's asserted. It's simply a record of what he took off the phone." Whitmire takes issue with the fact the State "continued to prosecute [him] while knowing [M.C.]'s phone contained information that could exonerate [him]" and the fact the State, defense counsel, and the court discussed the contents of exhibit 200 outside the presence of the jury. Whitmire's claim is not supported by law, and he suffered no prejudice because exhibit 200 was admitted.

Whitmire next challenges certain statements made by attorney Primmer during closing argument, claiming they made the jury believe he "is a bad person which honestly is the farthest thing from the truth."[7] The State counters, arguing the statements were counsel's tactical choice: "Counsel evidently believed his

---

[7] Specifically, Whitmire challenges the following statements by Primmer: "Folks, I'm not asking you to say that this is a good guy. I'm not asking you to invite him over for dinner. I'm not asking you to tell him that he deserves an award. He has a collectable lifestyle. He's out hiring hookers. He did some drugs with her."

client's best chance at an acquittal lay in not 'overselling' his virtue. Whitmire may have preferred a different approach. This is not the same as conceding guilt on the charged offense." Because we find the record inadequate to resolve this claim, we preserve it for postconviction relief. *See McNeal*, 867 N.W.2d at 105.

Whitmire takes issue with Detective Greg Chase's statements that he was "initially lied to by [M.C.]" and that it is "kind of common" for females to lie about having sex for money. Whitmire challenges the fact that the detective "knew that it was a possibility that she could be lying yet he labels her reliable." As the district court observed, "conflicting evidence" was presented at trial, particularly on M.C.'s credibility. But again, it was for the jury to decide the credibility of the witnesses. *See Laffey*, 600 N.W.2d at 59.

## VII.    *Conclusion*

Upon consideration of the issues raised on appeal, we affirm Whitmire's convictions for sexual abuse in the third degree, pimping, willful injury causing bodily injury, domestic abuse assault by strangulation causing bodily injury, and possession of marijuana.

**AFFIRMED.**