# IN THE COURT OF APPEALS OF IOWA

No. 21-1854
Filed May 24, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAYME POWELL,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Monona County, Roger L. Sailer, Judge.

A defendant appeals his convictions, alleging his attorney had a conflict of interest and challenging the denial of a motion for mistrial.  **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Badding, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BADDING, Judge.**

In a diatribe against the compensation paid to court-appointed attorneys, Jayme Powell's trial counsel moved for a mistrial outside the presence of the jury. He argued that it was fundamentally unfair to have "somebody being paid at the courthouse janitor level to defend [Powell] on something that's going to take his freedom away for the rest of his life." The district court disagreed and denied the motion, which counsel renewed as the trial progressed, at one point claiming he was "ineffective to help this man."

The jury found Powell guilty of attempted murder and related charges. Powell appeals, claiming (1) "defense counsel had a conflict of interest between being paid for his services and his effective representation"; and (2) the court abused its discretion in denying a mistrial after counsel "clearly informed the court he was providing ineffective representation to his client." We affirm.

## I. Background Facts and Proceedings

The day after Christmas in 2020, Powell got into an argument with his roommate, Richard. That argument led to a shooting on the interstate, during which at least two gunshots were fired at a truck being driven by Richard's girlfriend. Richard was following behind the truck on his motorcycle. One shot shattered the back driver's side window, where Richard's two-year-old daughter was sitting in her car seat, and the other went into the passenger side door. The girlfriend said these shots were fired by Powell from his truck.

When Richard raced forward on his motorcycle to help, Powell ran into him with his truck. Powell then fled on foot to a nearby farm and took a truck sitting outside. After driving that truck through a fence, Powell abandoned it and took

another truck from a neighboring farm. He drove to a friend's house, where he was apprehended by the police. Richard was severely injured in the motorcycle crash but survived, as did his girlfriend and child.

The State filed a trial information charging Powell with two counts of attempted murder, two counts of intimidation with a dangerous weapon with intent as a habitual offender, two counts of theft in the second degree, and possession of a firearm by a felon as a habitual offender. Powell's first two court-appointed attorneys withdrew before a third attorney was appointed to represent him in April 2021. The case against Powell proceeded to trial in October where the theme of the case—outside the jury's presence—was defense counsel's ire over the amount he is paid through his contract with the State Public Defender's office.

That theme began on the first day of trial when, after the jury was selected, defense counsel challenged the jury pool because only "20 of the 70 were male." Counsel prefaced that argument "with the fact that I'm court-appointed" and paid at "$68 an hour, which is fundamentally unfair to defendants to adequately maintain an office and sufficiently prepare to compete against better-funded prosecution." The district court denied the request "to disqualify the pool and call another pool of jurors," and trial started.

Counsel continued with his theme the next day of trial when he renewed the challenge to the jury pool:

> So I'm asking this Court to kick this jury out simply because the pool is unfair.
> With that, I will finish here with the fundamental fairness in terms of this public appointment for me because I do not have a paralegal, and then I have to pay an assistant out of my court-appointed funds if I wanted one. So I'm not going to be able to do

the statistics or have somebody go back and work yesterday to develop that jury pool question for the Court.

. . . .

My position is the State of Iowa is just downgrading this court appointment process. . . . Clearly, I can come to the Court, and I have to ask for funds, and the Court has given me extra funds . . . and I haven't asked for, you know, beyond that at this point because I've never really had any luck with it very much. . . .

Well, right now I would like somebody to come in or the Court to appoint somebody to do this jury investigation and come up with statistics and arguments and proof that the defendant isn't getting a fair jury pool here.

The court stated it would "give it another look" and make "a renewed ruling on that sometime prior to the end of trial," though no further ruling was made on that issue.

The third day of trial began with defense counsel moving for a mistrial because he learned the State had charged Richard "with extortion for threatening the prosecution that he wasn't going to testify." The State offered to make Richard, who had already testified for the prosecution, available if counsel wanted to call him as a witness. After the court denied the motion, defense counsel asked

for another mistrial and/or an order from the Court as I [thought] about fundamental fairness about the whole system of the public defense.

The State is getting paid. Their witnesses are all being paid. They get their money. The Court knows I did a trial a couple weeks ago. In the best case, I'm not going to be paid until March of next year. . . .

. . . .

So I can go through this whole trial now and get ready for cases, and the public defender—and of course I understand that I'm on the contract, but I won't know for months whether or not the public defender is going to pay me. Okay? Which in the back of my mind it's there.

I'm completely honest with my client in this public support system. And he has me, and he knows the situation. It's not affecting my . . . it's not impacting me in terms of being here and doing what I'm doing.

So I'm asking this Court to give an order that the State Public Defender's Office pay me at the end of this trial when it goes to jury. Otherwise I will have to wait months to be paid.

Now, to lay it out a little more, the State is paid weekly. The prosecution. And I'm sure the Court is as well. The only one that doesn't get paid weekly or has to worry about getting paid is me.

And I have to stand here and represent this man, and I will argue that that is not only unfair and it raises to the level of a mistrial at this point because of . . . this immunity thing and forcing a witness to testify. . . . [T]he State has an office right over here with their own staff that gets paid. And I brought it up yesterday. I get paid $68 an hour. I have to maintain a secretary. $18 living wage. That give[s] me[] $50. I have to maintain my office, pay for my computers, all of my equipment, and do everything else . . . which brings me less than the courthouse janitor.

So you have somebody being paid at the courthouse janitor level to defend him on something that's going to take his freedom away for the rest of his life. And I get thrown hardballs and hardballs. And it's just me. [The prosecutor] has the whole system behind him.

. . . . And if that's the way the State wants to play this game of defense work, it just [is] fundamentally unfair.

. . . . I'm asking for a mistrial, but I'm also asking the Court order the State to pay me so that at least . . . I'm not sitting here and having to worry about my bills and living my life and at the same time defending this guy because I have to invest my time and food and motels and getting here and then still worry about getting paid. The last time I did a trial over here the State wouldn't even pay me for staying here.

Though the court said that it was "not without sympathy" for defense counsel, it denied the motion for mistrial and request for an order requiring payment.

Later on that day, defense counsel again decried his lack of resources while challenging an exhibit the State offered that was "a summary of data information received from Verizon." The court overruled the objection, noting the State had put all the data into the record as an exhibit. Yet counsel argued: "I don't have the resources to have this—these specialized programs and licenses to go back through and analyze and look at and contribute to how this data works." So he again "urge[d] the Court just to throw it all out and start this whole thing over and then give the defense the resources necessary to defend this man." Once more, the court denied the motion.

On the last day of trial, defense counsel closed his theme with a final appeal to the court for a mistrial:

> Yesterday the prosecution argued that I had the evidence, that I could have analyzed it, that I could have done depositions. He's sitting here with state investigators in the courtroom that can help him. He's got all of his office. And the fundamental fairness of this is my client is indicating to me stuff that I should have done and could have done which makes me ineffective because I didn't have the time.
> . . . . [O]ver the years you just get into this process of give reasonable representation but don't—you know, you just can't do too much; otherwise, we are not going to pay you. So that makes me ineffective to help this man. So we are moving for a mistrial.

Noting that it had considered the same arguments previously, the court again denied the motion.

The jury ultimately found Powell guilty of two counts of attempted murder; two counts of intimidation with a dangerous weapon with intent; possession of a firearm by a felon; and the lesser-included offenses of operating a motor vehicle without owner's consent. Powell stipulated to prior felony convictions for the habitual offender enhancements and was sentenced to a total indeterminate sentence of fifty-four years in prison. He appeals.

## II.     Conflict of Interest

Citing his "Sixth Amendment right to counsel,"[1] Powell first claims that his attorney's statements about his compensation from the State Public Defender's

---

[1] While "[c]onflict-of-interest claims are typically raised in ineffective-assistance-of-counsel claims," Powell has not made that specific claim under his first issue heading. *See State v. Smitherman*, 733 N.W.2d 341, 345 (Iowa 2007). Instead, he frames the issue as a "generic conflict-of-interest claim." *Id.* As a result, we do not find any impediment to our authority to consider the claim on direct appeal. *Cf.* Iowa Code § 814.7 (2020) (limiting the authority of Iowa's appellate courts to resolve ineffective-assistance claims on direct appeal).

office "should have alerted the district court to a possible conflict of interest, thus giving rise to the court's obligation [to] inquire further to determine if an actual conflict existed." Because the court knew or should have known of the conflict, Powell argues "reversal is required" under *State v. Watson*, 620 N.W.2d 233, 238 (Iowa 2000). We review this claim de novo. *See Smitherman*, 733 N.W.2d at 345.

Powell is correct that the court in *Watson* held "that where the trial court knew or should have known of a particular conflict, reversal is required without a showing that the conflict adversely affected counsel's performance, even though no objection is made at trial." 620 N.W.2d at 238. But in cases since *Watson*, our supreme court has adopted the United States Supreme Court's holding in *Mickens v. Taylor*, 535 U.S. 162 (2002). *See State v. Vaughan*, 859 N.W.2d 492, 500 (Iowa 2015). The court in *Vaughan* explained that following *Mickens*,

> automatic reversal is required under the Sixth Amendment only when the trial court refuses to inquire into a conflict of interest over defendant's or counsel's objection. When neither the defendant nor his or her attorney raises the conflict of interest, the defendant is required to show an adverse effect on counsel's performance to warrant reversal, even if the trial court should have known about the conflict and failed to inquire.

*Id.* (internal citations omitted); *accord Smitherman*, 733 N.W.2d at 347 ("[W]hen the trial court failed to conduct an inquiry (or even if it did conduct an inquiry), the Supreme Court required the defendant to show his counsel's performance was adversely affected by the conflict of interest before it would presume prejudice and find a Sixth Amendment violation warranting reversal.").

While Powell's attorney extensively discussed his payment issues at trial— mostly to advance other arguments he was making, like the jury pool issue— Powell concedes on appeal that neither he nor his attorney raised the potential

conflict-of-interest issue before the court.  So, under *Vaughan* and *Smitherman*, Powell must show the alleged conflict adversely affected counsel's performance. Because he advocates for automatic reversal, Powell has not made that showing. We accordingly reject his claim.  *See State v. Kramer*, No. 16-2048, 2018 WL 346454, at *4 (Iowa Ct. App. Jan. 10, 2018); *Kensett v. State*, No. 17-1702, 2018 WL 6715484, at *1 (Iowa Ct. App. Dec. 19, 2018).

In doing so, we note that while defense counsel tied his compensation to Powell's ability to receive a fair trial, he specifically stated, "[I]t's not impacting me in terms of being here and doing what I'm doing."  That was apparent from counsel's performance at trial, where he cross-examined witnesses, presented defense witnesses, and moved for a mistrial multiple times.  Further, as the State points out, Powell cites no authority holding "that this type of claim about contract rates or reimbursement timetables for appointed counsel can establish an actual or potential conflict of interest."  *Cf. United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997) (rejecting an argument "that failure to pay fees or an attorney's motion to withdraw for his client's failure to pay, without more, gives rise to a conflict of interest"); *accord United States v. DiCarlo*, 575 F.2d 952, 957 (1st Cir. 1978).  For these reasons, we deny Powell's conflict-of-interest claim.

## III.    Mistrial for Ineffective Assistance

Powell next claims "the district court abused its discretion when it denied the motion for a mistrial after the defense counsel clearly informed the court he was providing ineffective representation to his client."  The parties agree that we should review this claim for an abuse of discretion.  *See State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006).

We first observe that, like with his last claim, Powell does not cite any authority supporting his claim that a mistrial can be granted because of ineffective assistance of counsel. Nor have we been able to find any. *Cf. State v. Harrison*, 578 N.W.2d 234, 238 (Iowa 1998) ("For a judge, sua sponte, to declare a mistrial because of perceived inadequacy of defense counsel is—and certainly should be—a rare event.").

In any event, we find no abuse of discretion in the court's denial of this claim. Iowa Code section 814.7 states that "[a]n ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822." In interpreting a prior version of section 814.7 (2018), our supreme court held that the district court did not err in refusing to consider ineffective-assistance claims that a defendant raised in a motion for new trial because, at the time, such claims could be raised only in postconviction relief and direct appeal.[2] *See State v. Trane*, 934 N.W.2d 447, 464 (Iowa 2019). We reach the same conclusion here.

**AFFIRMED.**

---

[2] As noted in the preceding footnote, section 814.7 has since been amended to remove our authority to resolve ineffective-assistance-of-counsel claims on direct appeal. *See State v. Jacobs*, 959 N.W.2d 395, 399 (Iowa 2021).